THE HOME INSURANCE COMPANY, INC., Plaintiff-Appellee, v. LORELEI RESTAURANT COMPANY, INC., et al., Defendants-Appellees.—(UNDERWRITERS AT LLOYD'S OF LONDON et al., Intervening Petitioners-Appellants.)—VELVET TRUNK, INC., a/k/a Sabrina Boutique, Inc., Plaintiff-Appellee, v. LORELEI RESTAURANT COMPANY, INC., et al., Defendants-Appellees.—(UNDERWRITERS AT LLOYD'S OF LONDON et al., Intervening Petitioners-Appellants.)

First District (1st Division)    Nos. 79-1379, 79-1792 cons.

Opinion filed April 28, 1980.

Julius Abler, of Libertyville, for appellants.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Saul A. Epton, Abraham W. Brussell, and David C. Lechner, of counsel), for appellee The Home Insurance Company, Inc.

Morrison & Kamins, P. C., of Chicago, for appellee Velvet Trunk, Inc.

Hynes, Olson, Karnezis & O'Rourke, of Chicago (Themis N. Karnezis, of counsel), for other appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

In case 79-1379, The Home Insurance Company, Inc. (Home), as subrogee for Central National Bank of Chicago (Central), brought suit

against Lorelei Restaurant Company, Inc. (Lorelei), Nicholas Karnezis, Evans Karnezis, and Napoleon Karnezis (Karnezis brothers), for property damage resulting from a fire on premises owned by Central and leased to the Karnezis brothers. In case 79-1792, Velvet Trunk, Inc. (Velvet Trunk), lessee of adjoining premises, brought suit against Lorelei and the Karnezis brothers for property damage arising out of the same fire.

Lorelei's insurers, Underwriters at Lloyd's of London (Lloyd's), and First State Insurance Company (First State) (collectively intervenors), filed petitions for leave to intervene in both cases. The issues are identical in each instance. The petitions for intervention were denied. Intervenors appealed from both orders. We have consolidated the appeals.

In this court intervenors contend their interests are not adequately represented by Lorelei, their insured, since the intervenors may be bound by an order or judgment entered against Lorelei. They also urge it would not be reasonable to compel them to rely upon Lorelei or Home for proper representation of their interests.

Home's suit against Lorelei and the Karnezis brothers sought recovery for payment Home made to Central, its subrogee and the owner of the premises. The complaint alleged that Lorelei and the Karnezis brothers were in possession, maintenance, and control of the premises at the time of the fire and they had a duty to control, possess, and maintain the premises in such a manner so as not to cause damage to the property. The complaint alleged negligence, *res ipsa loquitur*, willful and wanton acts, and intentional acts as alternate theories.

By their answer Lorelei and Evans Karnezis admitted they were in possession of the premises and had a duty to maintain them so as not to cause damage or destruction. Nicholas and Napoleon Karnezis denied their possession and the existence of such a duty.

The petition for leave to intervene incorporated by reference a separate motion for summary judgment on behalf of Lorelei. The motion averred the premises were leased to the Karnezis brothers individually, and the lease prohibited transfer of control from the Karnezis brothers. Since Lorelei, the insured, was not a party to the lease, it could not be in possession, and thus Lorelei would not be liable to Home. These contentions contradict the answer of Lorelei and Evans Karnezis.

The petition for leave to intervene alleged that Lloyd's and First State had refused to defend Lorelei in the present action. It further stated that in a case pending before the United States District Court, Lorelei had sued the intervenors on the policy to recover for the damage arising from the same fire. In that action the intervenors contended they were not liable because the Karnezis brothers had set the fire and acts of arson were not covered by the policy. In addition, intervenors alleged they could not reasonably rely upon Lorelei for adequate representation of their interests.

The facts and contentions of case 79-1792 involving Velvet Trunk are similar and need not be elaborated. Velvet Trunk was in the same building as Lorelei. It shared its roof and front and rear walls with Lorelei. The complaint of Velvet Trunk against defendants alleged the fire resulted alternatively from the negligent acts, willful, wanton, and reckless acts, or intentional acts of the defendants. The complaint also alleged the Karnezis brothers, all or one or more, owned, operated, and maintained Lorelei. This was denied in the answer. The intervenors incorporated in their petition a separate motion for summary judgment. The allegations thereof are essentially similar to those in the companion case.

The right of intervention in Illinois courts is governed by section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1.) This statute provides for intervention as a matter of right where specifically permitted by statute and also (par. 26.1(1)(b)) "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action * * *."

■■ Leave to intervene may be allowed by the trial court as a matter of discretion where a statute confers a conditional right or (par. 26.1(2)(b)) "when an applicant's claim or defense and the main action have a question of law or fact in common."

In *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 877-78, 392 N.E.2d 136, we find these principles expressed:

(1) Section 26.1 is to be liberally construed.

(2) Where intervention is discretionary, the ruling by the trial court "will not be disturbed absent a clear abuse of discretion."

(3) The salutary purpose of intervention "is to expedite litigation by disposing of the entire controversy among the persons involved in one action to prevent a multiplicity of actions."

■■■ We are also obliged to consider principles of insurance law which are applicable here. Generally, the duty of an insurer to defend an action against the insured is determined from the allegations of the complaint. If facts are alleged "within or potentially within policy coverage, the insurer is obliged to defend even if the allegations are groundless, false, or fraudulent." (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335; see also *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193-94, 355 N.E.2d 24.) If an insurer wrongfully refuses to defend an insured, the insurer is liable to the insured for breach of contract (*Thornton*, 74 Ill. 2d 132, 144), or it may be estopped from raising policy defenses or the issue of noncoverage in a subsequent action by the insured or by a judgment creditor in garnishment (*Thornton*, 74 Ill. 2d 132, 145; *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 973,

398 N.E.2d 582; *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22, 33, 217 N.E.2d 463, *appeal denied* (1966), 34 Ill. 2d 631).

■ However, when there is a conflict of interest between the insurer and the insured, the insurer should not be obligated or permitted to participate in the defense of the case. (*Thornton*, 74 Ill. 2d 132, 152; *Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 821, 386 N.E.2d 529, *appeal denied* (1979), 75 Ill. 2d 589.) Their obligation to provide a defense should be satisfied by reimbursing the insured for costs of the defense. (*Thornton*, 74 Ill. 2d 132, 152.) Otherwise, to require the insurer to defend "would put the insurer and the insured in the untenable position of attempting to cooperate in the conduct of the litigation where their interests were, in fact, adverse." *Thornton*, 74 Ill. 2d 132, 154.

It is manifest that the interests of the intervenors in the cases before us are antagonistic to the interests of Lorelei. If allowed to participate in the defense, the petitioners would only prejudice the defendants.

■ The intervenors have already denied liability to Lorelei on their policy. They have refused to defend Lorelei and have raised the defense of arson in legal proceedings instituted against them by Lorelei. It appears from the petitions for leave to intervene that the policy of the intervenors includes insurance against liability. Therefore, it is in the interest of Lorelei to fasten a liability upon the intervenors by proving the fire was caused by negligence. It is in the interest of the intervenors to escape this liability and to terminate any possible policy liability by showing that the fire was intentionally set by Lorelei or its agents. In our opinion, this type of situation is governed by *Thornton* and by *Maryland Casualty Co.* We conclude that permitting the intervention in the cases before us would result in manifest prejudice to the remaining parties.

■■■ Since there is such a serious conflict between the interests of the insurer and the insured, the failure of the insurer to participate in the defense of the action filed against the insured would not estop it from raising the defense of noncoverage in a subsequent proceeding (*Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 974, citing *Thornton*, 74 Ill. 2d 132, 152); such as a garnishment (*Reis v. Aetna Casualty and Surety Co.* (1978), 69 Ill. App. 3d 777, 791, 387 N.E.2d 700). Because the intervenors would not be bound by any order or judgment in the pending action, they may not intervene as a matter of right.

Furthermore, an intervenor must take a case as he finds it and cannot change a proceeding by introducing new matters not relevant to the controversy or which unduly complicate it. (*Hurley v. Finley* (1955), 6 Ill. App. 2d 23, 26, 126 N.E.2d 513; *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 1022, 380 N.E.2d 835.) Petitioners here raise several questions unrelated to

Home's suit for damages. They would have the court determine a question as to coverage afforded under the policies of insurance issued. This has no place in the controversy before us.

Other new issues which the interventions would bring into the case are interpretation of the lease to the destroyed premises and the effect of the policy issued by intervenors as regards coverage of the loss. These factors would be distinctly to the detriment of the present litigants. They would complicate and delay trial of the issues in the instant cases. (See *Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1978), 63 Ill. App. 3d 1012, 1022, and cases there cited.) It follows that intervenors are not entitled to intervene as a matter of discretion.

The learned and able trial judge properly denied petitioners' motions for leave to intervene. The orders appealed from are affirmed.

Orders affirmed.

McGLOON and CAMPBELL, JJ., concur.