THE COUNTY OF MASSAC, Plaintiff-Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY CO. *et al.*, Defendants-Appellees.

Fifth District   No. 81—677

Opinion filed March 8, 1983.

36

Garrison & Garrison, of Marion, for appellant.

Mitchell & Armstrong, Ltd., of Marion (J. C. Mitchell, of counsel), for appellees.

JUSTICE WELCH delivered the opinion of the court:

On September 5, 1978, suit was filed in the circuit court of Massac County against Superior Structures Co. and the County of Massac. As ultimately amended, the complaint alleged that on August 27, 1977, plaintiff Mark Krueger was driving south on Old Marion Road in Massac County. His car struck a partially completed bridge being constructed over Mud Creek by Superior Structures and fell into the creek. According to the complaint, Superior Structures acted negligently and in violation of a portion of the road construction injuries act (Ill. Rev. Stat. 1977, ch. 121, par. 314.4) by failing to provide adequate warning signs, barricades or lighting to alert motorists that the Mud Creek bridge was under construction and by failing to replace suitable barriers, signs or barricades which Superior knew or should have known had been removed by vandals. Similar allegations were made against the county, but instead of listing a violation of the road construction injuries act, the complaint asserted that the county had failed to erect suitable barriers or signs or arrange a suitable detour, contrary to section 9—102 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 9—102). This action was dismissed on March 17, 1981, pursuant to stipulation, because the plaintiff's claim had been settled.

At the time of Krueger's accident, the county was covered by a policy of "manufacturers' and contractors' liability insurance" issued by U.S. Fidelity and Guaranty Co. and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively referred to here as USF&G). The county forwarded a copy of Krueger's complaint to USF&G, and its Marion, Illinois, office responded by letter dated September 14, 1978. In that letter, USF&G's personnel stated that its policy did not cover the incident described in the complaint, and it would therefore not defend the county in that action.

The county then filed a complaint for a declaratory judgment against USF&G on September 26, 1980, two years after Krueger filed suit against the county, and six months before that action was dismissed. In that pleading, the county averred that USF&G's policy provided coverage for the Krueger accident and that due to USF&G's

refusal to defend it, the county had incurred substantial costs and attorney fees. It was requested that the court declare the rights and liabilities of the parties to the contract of insurance, that USF&G be ordered to defend the county in the Krueger action and that the county be awarded its costs and attorney fees previously expended in defense of that action. This complaint was amended on March 30, 1981. The amended complaint, which requested money damages rather than a declaratory judgment, alleged that the county had paid Mark Krueger $10,000 to settle the action against it and that its attorney fees incurred in connection with that suit totalled $1,267.50. Both of these amounts, which the county contended had resulted from USF&G's refusal to defend it, were sought in the complaint.

After a brief evidentiary hearing, the court entered a written judgment in which it was noted that USF&G's policy did not apply "to any construction or repair operations during suspension thereof" or "to omissions or supervisory acts of the insured in connection with work performed for the named insured by independent contractors." The court stated that evidence presented by USF&G at that hearing showed that the Krueger accident fell within those two exclusions. It was found that had USF&G assumed the defense of the Krueger action, a conflict of interest between USF&G and the county would have been created, and thus USF&G's failure to defend the county did not estop it from asserting those exclusions in the county's action against it. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) According to the principles of *Thornton* and *Peppers*, the court held USF&G responsible for the costs of the county's independent counsel, and entered judgment in favor of the county for $1,267.50. From that portion of the judgment denying it relief in the amount of its settlement with Mark Krueger, the county appeals.

The position taken by the county is that the Krueger complaint shows that that incident was potentially covered by USF&G's policy, and no conflict would have been presented had USF&G defended the county in that action. Consequently, the county asserts that USF&G should be estopped from raising policy exclusions against it. USF&G responds: (1) that its duty to defend the county was discharged when the county filed a declaratory judgment against it, (2) that the county waived the estoppel argument by failing to raise it in its complaint for declaratory judgment, (3) that equitable principles should preclude the county from asserting an estoppel against it, and (4) that a conflict of interest prevented it from defending the county in the Krueger action, as the trial court held.

■ The insurance policy between USF&G and the county provided that the insurer would defend any suit against the county seeking damages on account of bodily injury or property damage, "even if any of the allegations of the suit are groundless, false or fraudulent." The legal principles applicable to such a clause are not in dispute. If a complaint is filed against the insured which alleges facts giving rise to potential coverage by the policy, the insurer must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. Otherwise, the insurer is estopped from raising policy defenses and exclusions from coverage. *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.

■ In the case at bar, the county states that the trial court found that Krueger's complaint created potential coverage under USF&G's policy. USF&G insists that no such finding was made and argues that the only reason that the court awarded the county its attorney fees was because the court found that a conflict existed between USF&G and the county. However, if the court had found that Krueger's complaint did not give rise to potential coverage under USF&G's policy, USF&G would have been entitled to judgment in its favor in all respects (see *Tapp v. Wrightsman-Musso Insurance Agency* (1982), 109 Ill. App. 3d 928, 441 N.E.2d 145; *Graman v. Continental Casualty Co.* (1980), 87 Ill. App. 3d 896, 409 N.E.2d 387), and the court would not have had to consider the possibility of a conflict of interest nor would the county have been awarded its attorney fees. As a result, even though the judgment did not state, in so many words, that Krueger's complaint presented potential coverage, such a finding was necessary to the ultimate conclusions of the court. A comparison of that complaint with USF&G's policy indicates that this implied finding is correct, because the complaint alleged that Mark Krueger's injuries resulted from the negligence of the county's agents or employees and nothing in that complaint placed the occurrence within one of the stated exclusions.

USF&G further argues that, even if Krueger's complaint gave rise to potential coverage, it did not breach its duty to defend the county. It notes that that duty would have been satisfied had it filed a declaratory judgment action to construe the policy, and contends that, since the county filed a declaratory judgment action to construe the policy, it should not have been required to file a duplicate action in order to preserve its policy defenses. The existence of a declaratory judgment complaint on file, USF&G asserts, is significant, while the identity of the plaintiff is not.

■ USF&G's argument was rejected by this court in *Consoli-*

*dated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758. In that case, the insured was sued by six employees of a subsidiary who claimed that they had been injured on the job. The insured tendered the defense of these cases to the insurer, which accepted the defense of two claims but refused to defend the remaining four claims. The insured then filed a declaratory judgment complaint to determine its rights under the policy. While that action was pending, five more employees sued the insured, the insurer declined to defend those actions, and those claims were added to the declaratory judgment action. This court held that the insurer was estopped to deny coverage under the policy in each of the nine claims, even though the insured had filed a declaratory judgment action covering all nine claims which the insurer had refused to defend. As we noted, "An insurance company who suspects that it has no duty to defend cannot remain immobile and refuse to participate in the litigation." (92 Ill. App. 3d 1066, 1072-73, 416 N.E.2d 758, 764.) In this case, the insurer has done exactly that, and cannot now rely upon the insured's action in filing suit to discharge its own duty to the insured. The clause requiring USF&G to defend the county gave rise to an obligation by USF&G in return for the county's payment of premiums. It would destroy the mutuality of this clause to hold that the county itself had discharged USF&G's obligations by filing its own declaratory judgment action.

We recognize, as USF&G points out, that another district of the appellate court has reached a different result. In *Ayers v. Bituminous Insurance Co.* (1981), 100 Ill. App. 3d 33, 424 N.E.2d 1316, the insurer refused to defend the named insured, Ayers, who then brought a declaratory judgment action against the insurer. The insurer filed an answer and third-party complaint joining the plaintiff in the original tort action against Ayers. In both of these pleadings, the insurer sought the issuance of a favorable declaratory judgment. The court held that the insurer was not estopped to assert policy defenses because it had requested a judicial determination of its rights under the policy. In a footnote, the court observed, "We do not see any significance in the fact that Ayers first sought a declaratory judgment. It is the fact of the proceeding itself, and not the identity of the party initiating the proceeding, that is of legal import." 100 Ill. App. 3d 33, 35 n.1, 424 N.E.2d 1316, 1318 n.1.

In the case at bar, USF&G never indicated to the trial court that it desired a determination of rights under the policy. Its answer to the county's declaratory judgment complaint sought only a dismissal of the county's action. Unlike the insurer in *Ayers*, USF&G

thus remained immobile after refusing to defend the county, and, in fact, even contested the county's efforts to determine the rights and obligations of the parties to the policy. It is the duty of an insurer to *secure* a declaratory judgment determination of its obligations and rights under the policy (*Country Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 73, 239 N.E.2d 498, 505), not to take action to prevent such a conclusive and binding determination from being obtained. Under these facts, we continue to adhere to our position in *Consolidated Rail* and hold that the county's declaratory judgment action did not discharge USF&G's duty to defend it, thereby preventing the county from arguing that USF&G was estopped from asserting policy defenses.

*Auto-Owners Insurance Co. v. Corrie* (1981), 102 Ill. App. 3d 93, 429 N.E.2d 883, also cited by USF&G does not support its argument. Although the court in *Corrie* cited *Ayers* for the proposition that the identity of the plaintiff in a declaratory judgment action is not significant, *Corrie* presented the situation in which two insurance companies contested the coverage of the insured. All that *Corrie* stands for is that a declaratory judgment brought by one of two insurers contesting coverage inures to the benefit of the other insurer so as to satisfy the second insurer's duty to defend its insured.

■ Next, USF&G insists that the county waived its estoppel argument by not presenting it in its original complaint for a declaratory judgment. It directs our attention to *Ayers*. However, the waiver of the estoppel argument in *Ayers* was based upon the plaintiff's failure to present that argument to the trial court at any time. This is not the case here, for the record indicates that the county's request for damages, which was substituted for the declaratory judgment complaint, was based upon the estoppel of USF&G to raise police defenses. That argument cannot be considered waived as not having been presented at trial.

Estoppel, USF&G maintains, is an equitable doctrine which should be invoked "to insure fair play between parties regarding a dispute between them." It is asserted that estoppel should not arise against the insurer in this case, essentially because the county settled the suit against it before the declaratory judgment action could be determined. The record sheet in Krueger's action against the county shows that that suit and the county's declaratory judgment action were assigned to the same judge, who indicated, in a docket entry on January 8, 1981, that the declaratory judgment action should be heard before Krueger's action. It would be inequitable, according to USF&G, to allow the county to rely upon estoppel when it failed to see its declara-

tory judgment action through to completion before Krueger's suit was settled.

But, USF&G's contention is based upon a misapprehension of the nature of the estoppel which arises when an insurer fails to defend its insured. That estoppel is not the product of an analysis of all the circumstances surrounding that failure to defend, as is an equitable estoppel. It is instead derived from the insurer's breach of contract. The theory to support this type of estoppel is that once the insurer has not complied with those portions of the policy which benefit the insured, it may not rely upon those clauses which favor the insurer. (*Consolidated Rail Corp. v. Liberty Mutual Insurance Co.; Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.) Thus, the relevant factor in determining if the insurer may be said to be estopped is whether the insurer breached its duty to defend, not whether the insured continued to deal fairly with the insurer after that breach. The county's settlement with Mark Krueger before the resolution of its declaratory judgment action does not negate the estoppel of USF&G based upon its breach of contract.

The ultimate issue presented by this case is whether USF&G is excused from defending the county due to a conflict of interest between USF&G and the county. Several Illinois cases have decided that a conflict has been presented between the insurer and the insured under certain facts. Those fact situations may be classified in one of two categories.

In *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, Thornton sued Paul to recover damages for injuries which resulted when Paul struck Thornton on the head in Paul's place of business, Ben's Den. Paul was convicted of battery because of this incident. Thornton's amended complaint alleged that Paul had negligently struck him on the head with a wooden cane. Paul tendered defense of this action to his insurer, which declined to defend him, stating that Paul's conduct fell under a policy exclusion for assault and battery. Thornton obtained a default judgment and then filed a garnishment action against the insurer. The supreme court held that the insurer should not be estopped from raising policy defenses in Thornton's garnishment action, because a conflict of interest would have impaired the insurer's presentation of a defense for Paul. It was concluded that, had the insurer assumed that defense, its interests would have been equally served by a finding that Paul was not guilty or by a finding that he had committed a battery upon Thornton. See also *Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 404 N.E.2d 895; *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 398

N.E.2d 582.

A different type of conflict was presented in the recent case of *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079. The plaintiff, Murphy, was injured while riding in a van driven by Clancey and owned by Urso, who operated a preschool. Murphy sued Clancey and Urso, alleging that Clancey was acting as Urso's agent and that Urso negligently or wilfully and wantonly entrusted the van to Clancey. A default judgment was obtained against Clancey, and Murphy filed a garnishment action against Urso's business insurer. The insurer denied that it was obligated to furnish coverage, contending that Clancey was not a permissive user of the van. The circuit court held that by reason of the insurer's failure to defend Clancey in the original action, it was estopped to assert that exclusion. The supreme court disagreed with this conclusion, and reasoned that to best serve the preschool, the insurer should attempt to show that Clancey was not a permissive user of the van, while to facilitate the interests of Clancey, the insurer would be encouraged to show that Clancey had such permission. Additionally, Clancey's objective of attempting to prove the existence of that permission would be in conflict with the goal of the insurer in negating the permission, thereby shifting responsibility to Clancey, away from its insured.

■■■ *Thornton* and *Murphy* are examples of what has been called a limited exception to the insurer's duty to defend its insured. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 478, 430 N.E.2d 1104, 1109.) In both cases, the insurer's fidelity to its insured was hampered by its obligations to another party to the suit, or by its own interests. The significant question in determining if such a situation is created is whether, in comparing the allegations of the complaint to the terms of the policy, the interests of the insurer or a codefendant would be furthered by providing a less than vigorous defense to those allegations. An analysis of these principles reveals that, had USF&G assumed the defense of Krueger's suit against the county, no conflict of interest would have arisen.

The case at bar is, of course, unlike *Thornton* because the Krueger complaint does not on its face reveal any facts which indicate that the incident fell under any of the named exclusions in the county's policy. It is also dissimilar to *Murphy*, inasmuch as the allegations of that complaint do not include a fact, proof of which would be crucial to the assignment of responsibility to one of the two defendants. Krueger's theory of recovery was based upon the failure of the county, or of Superior Structures, to place adequate warning devices at the Mud Creek bridge. As such, the status of Superior Structures

as an independent contractor would have no bearing on the dereliction of either the county or Superior Structures. USF&G would have no motivation to provide an inadequate defense to Krueger's claim, because the facts necessary to establish the existence of an independent contractor relationship between Superior Structures and the county would not aid Krueger's cause of action against either defendant. Thus, prior to the final adjudication of that suit, the interests of USF&G would lie with the county and Superior Structures in showing that the precautions observed at the bridge did not constitute negligence or a statutory violation on the part of the codefendants.

Similarly, whether Krueger's accident took place during the suspension of construction activities is a matter which would not affect Krueger's tort claim. Like the existence of an independent contractor relationship, resolution of this issue could turn upon facts which are adduced in the tort action, but those facts would only be determinative in a subsequent suit between the county and USF&G. Consequently, neither exclusion asserted by USF&G, and deemed applicable by the trial court, would have prevented USF&G from offering a full defense to Krueger's action against the county. USF&G cannot therefore be excused from its failure to defend the county in that suit.

The county's remedy for USF&G's breach of contract consists of the costs of its defense plus the amount of a reasonable settlement of that action. The cost of the county's independent counsel has previously been established, and judgment in favor of the county for that cost is affirmed. Judgment in favor of the defendant on the rest of the county's complaint for damages is hereby reversed, and this cause is remanded to the circuit court of Massac County to determine whether the county's settlement with Mark Krueger was in a reasonable amount. If that finding is made, the court is directed to enter judgment in favor of the county for that additional amount.

Affirmed in part, reversed in part, remanded with directions.

JONES and KARNS, JJ., concur.