ILLINOIS MASONIC MEDICAL CENTER, Plaintiff-Appellee, v. TUREGUM INSURANCE COMPANY *et al.*, Defendants-Appellant.

First District (5th Division)   No. 87—3332

Opinion filed February 19, 1988.—Modified on denial of rehearing May 6, 1988.

Jay A. Canel and Peter M. King, both of Jay A. Canel, P.C., of Chicago, for appellants.

Richard G. French and Russell P. Veldenz, both of French, Rogers Kezelis & Kominiarek, P.C., of Chicago, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an interlocutory appeal from the entry of a preliminary mandatory injunction in a declaratory judgment action.

On June 19, 1985, Yeong Shin filed a medical malpractice complaint (the Shin action) against Jose Salazar, M.D., and Illinois Masonic Medical Center (the Hospital) alleging that defendants provided neurological treatment to her, including the performance of various neurosurgical procedures, during three separate periods of hospitalization: November 3 through November 12, 1977, January 17 and 18, 1978, and January 19, 1978, through February 26, 1979; and that as a result of defendants' negligence during one or more of those hospitalizations, she sustained permanent brain damage.

On January 30, 1987, the Hospital filed an amended complaint for declaratory judgment, injunctive relief, attorney fees and costs, alleging that prior to and until December 1, 1977, there was in force a policy of professional liability insurance issued by Turegum providing coverage for damages arising from the Hospital's negligence in rendering medical services; that upon receipt of proper service of summons it forwarded a copy of the Shin complaint to Turegum; that in a letter dated October 7, 1985, counsel from the law firm retained by Turegum acknowledged coverage under the policy for the period between November 11 and December 1, 1977, but further stated that it "would not be liable to defend or pay any claims on behalf of the Hospital for any liability arising from the hospitalizations of [Shin] after the policy termination date of December 1, 1977." Counsel also advised the Hospital that "[w]e have appeared for the Hospital generally, and we are currently defending all claims as a courtesy, pending clarification as to whether [the Hospital] wishes separate counsel to be involved for those claims which are not covered by the Underwriters." In similar letters dated November 22 and December 2, 1985, counsel for Turegum reiterated that "no coverage is afforded for the hospitalizations which began after December 1, 1977, and the Underwriters cannot be responsible for the continued defense of all the allegations. While we will be happy to work as co-counsel with the attorneys designated to defend the Hospital for the period of coverage beginning December 1, 1977 and thereafter, we again ask that you advise us who will be defending the Hospital for the allegations arising after the Underwriter's period of coverage." The complaint further alleged that a demand was made that Turegum's attorneys relinquish control of the case to counsel chosen by the Hospital but that Turegum refused.

On April 3, 1987, Turegum filed a motion to dismiss, which was

denied on May 29, 1987. On August 19, 1987, the Hospital filed a motion requesting that the trial court issue a preliminary injunction directing Turegum to relinquish control of the defense of the Shin action to counsel retained by it and to reimburse it for the reasonable costs incurred in that litigation. In support thereof, the Hospital argued, as it does on appeal, that the above-stated facts demonstrate the existence of a conflict of interest between it and Turegum, syllogizing that: Turegum has a legal duty arising out of the insurance contract to defend all claims actually or potentially within the coverage provided by the policy; that aside from a finding of no negligence—and, hence, no liability—Turegum's interests would be best served by a finding that the negligence occurred after the expiration of the policy so as to shift any liability from itself to the Hospital and, therefore, by less than vigorously defending those allegations involving occurrences after December 1, 1977; and that in view thereof it (the Hospital) is entitled to be defended by counsel of its own choosing and, by reason of Turegum's duty to furnish a defense, to reimbursement by Turegum of the reasonable costs thereof.

On October 2, 1987, the trial court granted the Hospital's motion, denied Turegum's motion for a stay, and this appeal followed.

OPINION

■ The general rule in Illinois is that an insurer is obligated to defend an action against an insured where the complaint contains allegations which bring the claim actually or potentially within the policy (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Pepper Construction Co. v. Casualty Insurance Co.* (1986), 145 Ill. App. 3d 516, 495 N.E.2d 1183; *Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 479 N.E.2d 988), even if the allegations are known to be groundless, false or fraudulent (*Thornton*, 74 Ill. 2d 132, 384 N.E.2d 335); and because an insurer's duty to defend is broader than its duty to indemnify, it may be obligated to defend against causes of action and theories of recovery which are not in fact covered by the policy (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245). In those circumstances, the insurer may choose to defend under a reservation of rights or seek a declaratory judgment that there is no coverage; otherwise, it will be estopped from raising the defense of noncoverage in a subsequent action between it and the insured. *Murphy v. Urso* (1981), 88

Ill. 2d 444, 430 N.E.2d 1079; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123.

■■ ■ Ordinarily, the duty to defend includes the right to control the defense so as to allow insurers to protect their financial interest in the outcome of the litigation and to minimize unwarranted liability claims (*Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 479 N.E.2d 988). At the same time, the attorney retained by the insurer also owes a fiduciary duty and has the same professional obligations to the insured as would exist had he or she been personally retained by the insured. (*Nandorf, Inc.,* 134 Ill. App. 3d 134, 479 N.E.2d 988.) It has been recognized, however, that, realistically, the insurer's attorney may have closer ties to the insurer than to the insured and a more compelling interest in protecting the insurer's position, by reason of which there arises a conflict of interests. (*Nandorf, Inc.,* 134 Ill. App. 3d 134, 479 N.E.2d 988.) In such cases, Illinois courts have invoked a limited exception to the general rule regarding the duty to defend. The exception, as explained by the supreme court, is that where a conflict of interests exists the insured, rather than the insurer, is entitled to assume control of the defense of the underlying action; but by reason of its contractual obligation to furnish a defense, the insurer must underwrite the reasonable costs incurred by the insured in defending the action with counsel of his own choosing. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

■ The test of whether a conflict exists is if, in comparing the allegations of the complaint to the terms of the policy, the insurer's interests would be furthered by providing a less than vigorous defense to the allegations (*Nandorf, Inc.,* 134 Ill. App. 3d 134, 479 N.E.2d 988; *Pepper Construction Co. v. Casualty Insurance Co.* (1986), 145 Ill. App. 3d 516, 495 N.E.2d 1183; *County of Massac v. United States Fidelity & Guaranty Co.* (1983), 113 Ill. App. 3d 35, 446 N.E.2d 584). The insurer's interest in negating coverage does not in itself create a sufficient conflict to preclude the insurer from assuming control of the defense. (*Pepper Construction Co.,* 145 Ill. App. 3d 516, 495 N.E.2d 1183; *Nandorf, Inc.,* 134 Ill. App. 3d 134, 479 N.E.2d 988; *O'Bannon v. Northern Petrochemical Co.* (1983), 113 Ill. App. 3d 734, 447 N.E.2d 985.) However, conflicts of interest have been found where the underlying complaint asserts claims which are covered as well as others which the insurer is required to defend but asserts are not covered by the policy. *Nandorf, Inc.,* 134 Ill. App. 3d 134, 479 N.E.2d 988; *Pepper Construction Co.,* 145 Ill. App. 3d 516, 495 N.E.2d 1183.

■ Turegum first contends that the trial court's finding of a con-

flict of interest was erroneous, asserting that "in the context of an insured-insurer relationship, a conflict requiring the retention of separate counsel for an insured occurs only when an adjudication in the underlying action will have a binding effect on the insured in a later declaratory judgment action concerning the insured's coverage position [and that] typically, these situations have involved conflicts in the positions taken by two insured's who are covered by the same insurer," as in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, or "in cases involving intentional torts where the trier of fact must resolve factual issues (*i.e.*, intent) which could result in a judgment against the insured for damages that would not be reimbursed from insurance coverage," as in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24. Comparing *Murphy* and *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104, which were decided on the same day, Turegum asserts that *Clemmons* demonstrates why no conflict exists.

In each case, the injured party in an automobile collision sought to recover from The Travelers Insurance Co. the amount of a default judgment entered against the driver of the vehicle in which he or she was a passenger when injured. In both cases, the policies issued by Travelers provided coverage to the owner of the vehicle and to those driving it with the owner's permission.

In *Murphy*, the underlying complaint alleged that the driver of the preschool bus was an employee of the owner and was acting as the owner's agent at the time of the accident—an allegation denied by the owner—and named both as defendants. The *Murphy* court held that because the allegations were within the scope of the policy's coverage, Travelers had a duty to defend both the owner, the named insured, and the driver, the putative insured, but also observed that the defenses would, necessarily, be diametrically opposed in that it was in the best interests of the driver to show that he was using the bus in the scope of his employment with the owner's permission so as to bring the claim within the policy coverage, whereas it was in the best interests of the owner and Travelers to show that the driver had been fired and did not have permission to use the vehicle and to thereby shift the liability to him. The *Murphy* court thus found that the exception discussed in *Thornton v. Paul* (1978) 74 Ill. 2d 132, 384 N.E.2d 335, and *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, to the general rule regarding the duty to defend was applicable and held that an insurer facing a conflict of interest with either a named or a putative insured in the conduct of the insured's defense is neither obligated nor permitted to

participate in the defense but, instead, must pay the costs of independent counsel and whatever defense the insured chooses to present.

In *Clemmons*, the driver of the car (Reed) was employed as a blood distributor for the American National Red Cross, which owned the car and left it at Reed's disposal for blood deliveries. However, although Clemmons' complaint alleged the time, location and cause of the accident, it did not name the Red Cross as a defendant or allege that Reed was driving the car with the permission of the Red Cross. As in *Murphy*, Travelers denied liability and refused to defend Reed. Following entry of the default judgment against him, Clemmons brought an action against Travelers seeking a declaration that it had wrongfully refused to defend Reed and was therefore estopped from denying that he was covered by the policy. The court held, as it did in *Murphy*, that because the complaint contained allegations potentially within the scope of the policy coverage, Travelers owed a duty to defend Reed and was estopped from denying him coverage. The court also found, however, that unlike *Murphy* there was no conflict of interest relieving Travelers of its duty to take charge of Reed's defense, noting that because the owner was not named as a defendant, "[Travelers'] loyalty is not torn, as it was in *Murphy*, between the conflicting interests of the owner and the insurer on the one hand and the driver on the other when permission is at issue." The court explained,

> "Unlike *Murphy*, permission was not an issue here in the underlying suit against Reed. The only issue was the negligence of the driver. On this point the insurer and the driver did not have conflicting interests; each wanted to show that there had been no negligence and thus put an end to Clemmons' claim.
>
> If Clemmons could show negligence, the uneasy contractual alliance between Travelers and the driver would eventually disintegrate. But any conflict between the two could only come in the future; nothing that Travelers could do in the underlying suit against Reed would affect the later dispute over policy coverage about permission. Travelers could not manipulate the proceedings in the Clemmons-Reed suit to lay the groundwork for later taking the position that Reed was driving without permission. Evidence relating to permission would be irrelevant in the underlying suit." *Clemmons*, 88 Ill. 2d at 478-79, 430 N.E.2d at 1109.

It is Turegum's position that the instant case is analogous to

*Clemmons* in that it and the Hospital share a common interest in showing the absence of any negligence but that, in any event, "there will be no adjudication as to the timing of the negligence, if any, in the underlying case." According to Turegum, "Shin's lawyers have only to prove the Hospital was negligent during one or more of the three hospital stays. It is not a part of her proof to establish when that negligence took place. Thus, no ruling in the tort action, other than the insured's liability, will have an effect in the declaratory judgment action" which gives rise to a conflict of interest requiring it to relinquish control of and/or reimburse the Hospital for the defense of Shin's action.

Disputing Turegum's argument in its entirety, the Hospital asserts that contrary thereto: (1) a finding of liability in the underlying action could have a binding effect in a later declaratory judgment action against Turegum, because a showing by Shin in establishing her *prima facie* case that a negligent act was committed which proximately caused her injury would likely include a showing of when that act occurred and, therefore, be determinative of whether it or the Hospital must bear the burden of liability; and (2) that in any event, under Illinois law a conflict of interest arises not only in the two situations described by Turegum but whenever a comparison of the allegations of the complaint and the terms of the policy reveals that the interest of the insured would be furthered by its manipulation of the proceedings or by providing a less than vigorous defense against the allegations so as to shift liability from itself to the insured. As support therefor, it quotes from *Murphy*, wherein the supreme court stated:

> "The particulars of the conflict of interest do not matter, only that there is a conflict at all. The insured has the right to be defended by counsel of his own choosing. A ruling that required an insured to be defended by what amounted to his enemy in the litigation would be foolish." (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 454-55, 430 N.E.2d 1079, 1084.)

The existence of a conflict is substantiated, it posits, by the three letters from counsel for Turegum expressly refusing to defend against or indemnify it for any claims other than those arising out of the treatment rendered during the first hospitalization during which period the policy was still in force.

The Hospital further maintains that *Pepper Construction Co. v. Casualty Insurance Co.* (1986), 145 Ill. App. 3d 516, 495 N.E.2d 1183, rather than *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104, is controlling here. *Pepper Construc-*

*tion* was an appeal from the denial of a motion to dissolve a preliminary injunction nearly identical in its directives to the one entered in this case. Following the collapse of the roof of one of its stores after a heavy snowfall, Marshall Field & Co. brought suit against Pepper, the general contractor, and several subcontractors seeking $233,515.21 ($150,000 in consequential damages and $83,515.21 for repair costs in addition to those for which Pepper had previously expended more than $600,000). Pepper tendered its defense to Casualty, which agreed to defend Pepper under a reservation of its rights under the policy. Specifically, Casualty acknowledged policy indemnification of Pepper for work performed by the subcontractors but it denied coverage for work performed by Pepper itself and advised Pepper to retain other counsel to proceed against the subcontractors for indemnity and reimbursement of the amounts Pepper had expended on repairs. Pepper filed an action against Casualty seeking, *inter alia*, a declaration that because of a conflict of interests between it and Casualty, it had the right to control its own defense and requested that Casualty be directed to (1) relinquish control of the defense to its privately retained counsel and (2) reimburse it for the costs thereof.

On appeal Casualty argued that because it acknowledged liability coverage for the consequential damages without regard to whether liability was based on Pepper's fault or that of its subcontractors, the case did not involve clearly opposing interests as were present in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, and other cases factually similar thereto; and that because the amount for which it acknowledged liability was greater than the amount of Pepper's potential liability, so too was its interest in defending the action.

The court rejected Casualty's position, observing that if Pepper were found vicariously liable for work performed by the subcontractors, the policy would provide coverage for the entire amount, whereas if Pepper were found liable on the basis of its own work, coverage would not be available for the repair costs, and held that under the reasoning in *Murphy* a conflict of interest existed entitling Pepper to be defended by counsel of its choice and to be reimbursed by Casualty therefor. 88 Ill. 2d at 454, 430 N.E.2d at 1084.

Irrespective of whether the timing of the malpractice, if any, would be established in the underlying suit, we agree with the Hospital that because Shin's complaint alleges that negligence occurred during one or more of three separate hospitalizations and because two of those confinements took place after the policy expired—and,

hence, were not covered by it—Turegum's best interests (a) lie in a finding that the malpractice, if any, occurred during one or both of the two post-policy periods and (b) would be furthered by a less than vigorous defense to the allegations relating thereto; and that under the reasoning and decisions of the authorities discussed above, a conflict of interests therefore exists which requires Turegum to relinquish control of the defense of Shin's action to the Hospital's counsel of choice.

■■ ■ We are not persuaded otherwise by Turegum's assertion that Rule 5—107(c) of the Code of Professional Responsibility (107 Ill. 2d R. 5—107(c)) (the Code) assures that counsel selected by it to defend the Shin action would not attempt to fix liability outside of the policy period. That subsection provides:

"A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services."

Without in any way suggesting or implying that counsel for Turegum would intentionally conduct the defense in a manner violative of the above-quoted section of the Code, we nevertheless note that the same section of the Code also requires that "[a] lawyer shall represent his client with undivided fidelity" (107 Ill. 2d R. 5—107(a)); that subsections (a) and (b) of Rule 5—105 of the Code preclude an attorney from accepting or continuing employment "if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client" (107 Ill. 2d Rules 5—105(a), (b)); and that according to subsection (c) it is only where it is "obvious that he can adequately represent the interest of each [client] *and* if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each" that a lawyer may represent multiple clients. (Emphasis added.) 107 Ill. 2d R. 5—105(c).

From our reading of the opinions on this subject, we believe that the mere emergence of these competing ethical considerations was what the supreme court intended to foreclose in ruling that in cases where there is a conflict between the interests of the insured and the insurer, the insured is entitled to be represented in the underlying action by counsel whose loyalty is unquestionably undivided. Turegum's argument that counsel for the Hospital could similarly prejudice its interest by attempting to fix liability during the policy period misses the point that the Hospital, not it, is the defendant in the

Shin action and that while one of the Hospital's interests is, certainly, to avoid financial liability for malpractice, for additional reasons not shared by Turegum, the Hospital's overall interests would be best served by a vigorous defense against all of the allegations and a resultant finding of no malpractice whatsoever.

■ Turegum alternately contends that even assuming the existence of an actual or potential conflict justifying representation of the Hospital by privately retained counsel, the trial court erred in ordering it to both relinquish complete control of the defense to the Hospital's attorneys and reimburse the Hospital for the fees and costs thereof. In this regard, Turegum first argues that the trial court's order precluding it from participating in the defense of the Shin action is contrary to the holding in *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.

In that case, the litigation arose out of an incident in which Peppers shot a man (Mims) whom he believed had been attempting to burglarize his business. Mims filed a three-count personal injury complaint against Peppers alleging intentional assault, negligence and wilful and wanton conduct. Following notification by Maryland Casualty that its policy insuring a parcel of property adjacent to the business did not also cover the business, Peppers retained private counsel, who immediately filed an appearance and a motion to dismiss Mims' action. Three months later, Peppers sent a copy of Mims' complaint to St. Paul Fire & Marine Insurance Co. (St. Paul) seeking coverage under his homeowner's policy. At about the same time, Maryland Casualty filed an action seeking a declaration of its rights and obligations under its policy. Six months later, attorneys for St. Paul advised Pepper by letter that they had been retained to defend him in the Mims action and also filed an answer to the complaint; but 24 days later they withdrew both their appearance and the answer and denied coverage on the ground that the shooting was intentional and therefore not covered by its policy. Peppers filed a counterclaim against St. Paul in the declaratory judgment action previously filed by Maryland Casualty.

The supreme court decided, among other issues, that the trial court correctly found that St. Paul was obligated to defend Peppers because, in addition to the counts alleging intentional and wilful and wanton conduct, the complaint also contained allegations of negligence which were potentially within the coverage of the policy; but that by virtue of those alternate allegations, a conflict of interests arose between Peppers and St. Paul entitling Peppers to be defended by his own attorney.

Turegum points out, however, that the court then stated,

"Also, St. Paul is entitled to have an attorney of its choosing participate in all phases of this litigation subject to the control of the case by Peppers' attorney, and St. Paul is not barred from subsequently raising the defense of noncoverage in a suit on the policy." (64 Ill. 2d at 199, 355 N.E.2d at 31.)

While acknowledging that, subsequently, the supreme court expressly stated in *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079, and *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, that when there is a conflict of interests, the insurer is "not obligated *or permitted* to participate in the defense" (emphasis added) (*Murphy*, 88 Ill. 2d at 454, 430 N.E.2d at 1084), Turegum takes the position that because the question of the insurer's right to participate in the defense was not a direct issue in either *Murphy* or *Thornton*, and because neither of those courts expressly overruled the holding in *Maryland Casualty*, the phrase "or permitted" is merely *dictum* which does not change the law that even where a conflict exists, an insurer has the right to participate in the defense of the underlying action.

Additionally, Turegum maintains that, in any event, this case is distinguishable from those in which the conflict is between an insured and his insurer concerning a single act or event resulting in a claim which either was or was not covered by a single insurance policy. Rather, it posits, this case is analogous to a situation where an insured is sued for acts of negligence extending over a period during which two separate policies issued by two different carriers were in effect or to a dramshop action where the dramshop carrier and an "Owner, Landlord and Tenant" carrier both provide coverage for the same occurrence. It is Turegum's position that the facts here show that the Hospital did have other coverage—albeit under a self-insurance program—throughout the periods of Shin's second and third hospitalizations. From that premise it asserts, without citation to authority, that the Hospital should not, simply because of its decision to self-insure, be put in a better position than a commercial insurer which under the same circumstances would have the duty to cooperate with the other carrier in a joint defense of the case and be responsible for its own legal fees.

As to Turegum's latter argument, we agree that the facts in this case are somewhat unique in that the underlying suit involves allegations which may have occurred, if at all, either during or after the subject policy period—or both. Nevertheless, as we have already determined, the very fact that the negligence may have occurred dur-

ing the time the policy was in force triggers its obligations thereunder without regard to what other insurance may have existed during later periods.

We additionally note that it is true, as our research discloses, that neither the supreme court—in *Thornton* or *Murphy*—nor courts citing those cases for the proposition that the insurer is "not permitted" to participate in defense of the underlying action, have discussed the reasoning underlying that prohibition.[1]

However, we further note, and counsel for Turegum acknowledges, that even in *Maryland Casualty*, the supreme court stated—in a passage immediately preceding the above-quoted one on which it relies:

> "Absent acceptance of the defense by Peppers or the waiver by St. Paul [of the defense of noncoverage in a subsequent declaratory judgment action], Peppers has the right to be defended in the personal injury case by an attorney of his own choice *who shall have the right to control the conduct of the case*. By reason of St. Paul's contractual obligation to furnish Peppers a defense *it must reimburse him for the reasonable cost of defending the action*." (*Maryland Casualty Co.*, 64 Ill. 2d at 198-99, 355 N.E.2d at 31.)

In response to our inquiries at oral argument, appellate counsel for Turegum ultimately agreed that even if, in accordance with "the holding" in *Maryland Casualty*, its attorney were permitted to participate in the case, the practical effect of the Hospital's right to control the defense is that the nature and extent, if any, of such participation would be entirely subject to the approval of the Hospital's attorney; and Turegum's counsel also agreed that if in the exercise of his professional judgment the Hospital attorney determined that it could be detrimental to the interests of the Hospital, Turegum's "right" to participate would be rendered meaningless. In this regard, counsel for the Hospital stated at oral argument that, under the circumstances here, he would not agree to any participation in the case by Turegum's attorneys.

---

[1]But see *Home Insurance Co. v. Lorelei Restaurant Co.* (1980), 83 Ill. App. 3d 1083, 404 N.E.2d 895, where, in affirming the denial of the insurers' petition to intervene, the court stated "[i]t is manifest that the interests of the intervenors in the cases before us are antagonistic to the interests of Lorelei. If allowed to participate in the defense, the petitioners would only prejudice the defendants" (83 Ill. App. 3d at 1087, 404 N.E.2d at 898), and by interjecting issues not directly related to the underlying suit for damages, "would complicate and delay trial of the issues in the instant case" (83 Ill. App. 3d at 1088, 404 N.E.2d at 898).

In conclusion, we find that on the facts before us, the trial court: (a) correctly found that there exists a conflict of interests between the Hospital and Turegum entitling the Hospital to assume control of the defense of the Shin action and to reimbursement from Turegum of the costs thereof; and (b) properly exercised its discretion in determining that without a preliminary injunction requiring Turegum to direct its attorneys to withdraw from and relinquish control of the case to counsel of the Hospital's choosing and to pay the costs of that defense, the Hospital would suffer the irreparable harm of being defended by an insurer and its counsel with interests adverse to it.

In its petition for rehearing Turegum suggested that our opinion might be construed as holding that it would be bound by a judgment entered in the underlying litigation (the Shin case). We did not so hold and the Hospital agrees that Turegum would not be bound by any such judgment. In its answer to the petition for rehearing the Hospital stated that "Illinois law clearly allows Turegum to later bring a declaratory action after underwriting the cost of defense in the underlying litigation," and that "Turegum will not be estopped [from raising a defense of non-coverage] by virtue of a judgment in that underlying litigation [the Shin case]."

For the reasons stated, the order of the trial court granting the Hospital's motion for a preliminary injunction is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.