No. 2--05--0063                    filed: 2/6/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--MR--1212 |
| W.H. McNAUGHTON BUILDERS, INC., a/ka/ W.H. McNaughton Builders, LLC, | ) ) ) ) | Honorable Bonnie M. Wheaton, |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

_____

_____

JUSTICE McLAREN delivered the opinion of the court:

In 2004, defendant, W.H. McNaughton Builders, Inc., a/k/a W.H. McNaughton Builders, LLC (McNaughton), was sued by Fred and Marianne Begy (the Begy Suit), whose home McNaughton had built in 1991. McNaughton turned the Begy Suit over to its insurer, plaintiff, American Family Mutual Insurance Company (American Family), which, pursuant to its policy with McNaughton, had a duty to defend the suit. American Family agreed to comply with its duty to defend, but reserved the right to later deny coverage if McNaughton were found liable for damage occurring before the inception of the policy in 1994. In response, McNaughton argued that American Family and McNaughton had a conflict of interest, because American Family's interests

would be protected if McNaughton were found liable in the Begy Suit for damage occurring before 1994.

Because American Family's interests would be protected if McNaughton were found liable, McNaughton argued that it should not be forced to defend the Begy Suit with an attorney retained by American Family. Rather, McNaughton argued that it should be permitted to select its own attorney at American Family's expense in accordance with well-settled law. American Family disagreed. It filed a declaratory judgment action in which it argued that there was no conflict and sought a determination that it had the right to select McNaughton's attorney. The trial court found that there was no current conflict, and accordingly it granted declaratory judgment for American Family. McNaughton appeals, and we reverse and remand.

## I. BACKGROUND

American Family issued a commercial general liability policy (the Policy) to McNaughton in 1994. As part of the Policy, American Family agreed that, in exchange for McNaughton's payment of annual premiums, American Family would cover expenses for which McNaughton became liable because of "property damage" covered by the Policy. According to the Policy, covered property damage was damage that, among other restrictions, occurred during the Policy period and of which the insured was unaware prior to the Policy's inception. Additionally, in order to be covered by the Policy, the damage had to come within the Policy's definition of "property damage," which, in relevant part, was as follows:

> "a. Physical Injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

In turn, the Policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

American Family added another policy exclusion, effective December 31, 2002. Specifically, as of that time, the Policy excluded from coverage, among other things, "direct or indirect losses resulting from" "property damage *** includ[ing] any claim for diminution of value of real or personal property due to its contamination with 'mold' in any form." The Policy remained current through 2004.

In July of that year, the Begys sued McNaughton. In their two-count complaint, the Begys alleged breach of implied warranty and breach of implied warranty of habitability. Count I alleged that, in building the Begys' home, McNaughton breached an implied warranty requiring it to install in a good and workmanlike manner an exterior insulation and finish system (EIFS).[1] Count II alleged, among other things, that, as a result of McNaughton's failings, the Begys' home suffered mold damage. Although the complaint did not allege any dates, the agreement between the Begys

---

[1] An EIFS is a multilayered exterior wall system that wraps the exterior of a home. It is intended to reduce air infiltration and energy consumption, and to stabilize the interior environment. See http://www.eima.com/eima/eifs.htm (last visited January 3, 2006).

and McNaughton was attached to it, and, according to that agreement, construction of the home was to begin in September 1991 and be "substantial[ly]" completed by June 1992.

McNaughton informed American Family of the Begy Suit, and American Family retained counsel to defend McNaughton. Shortly after doing so, however, American Family advised McNaughton that American Family would be defending the Begy Suit under a complete reservation of rights to later deny coverage. In reserving its rights, American Family pointed out that: (1) the Policy did not cover property damage occurring prior to the Policy's inception in 1994; (2) the Policy did not cover property damage that resulted from mold and occurred after December 31, 2002; and (3) the Policy did not cover property damage that McNaughton knew about before the Policy's inception in 1994.

After receiving notice of American Family's reservation of rights, McNaughton advised American Family that, due to a conflict of interest, McNaughton was entitled to hire independent counsel to represent it in the Begy Suit. According to McNaughton, a conflict existed because, although both McNaughton and American Family had a mutual interest in McNaughton's being found not liable in the Begy Suit, American Family's interests would be equally protected if McNaughton were found liable for damages not covered by the Policy. McNaughton noted that the Policy did not cover damage that occurred before 1994 or damage that McNaughton knew about before 1994 or damage that was due to mold and that occurred after 2002. McNaughton also noted that the Begys' claims dealt both with mold damage and with breaches of warranties occurring prior to 1994, that is, when the Begys' home was built in 1991 and 1992. Finally, McNaughton noted that issues as to the timing of the alleged damage--issues, that is, that McNaughton said would be resolved in the Begy Suit--could determine whether McNaughton had coverage under its policy with American Family. For these reasons, McNaughton argued, a conflict of interest existed between

McNaugton and American Family, and, therefore, it was improper for American Family to control McNaughton's defense in the Begy Suit. McNaughton asked American Family to allow McNaughton to retain independent counsel to defend it against the Begys' allegations.

American Family responded to McNaughton's request by filing a declaratory judgment action against McNaughton. In its complaint, American Family asked the trial court to declare that there was no conflict and that, accordingly, American Family should be permitted to select the attorney to control McNaughton's defense in the Begy Suit.

The parties filed cross-motions for judgment on the pleadings. In support of its motion, American Family argued, inter alia, that there was no conflict because there would be no opportunity in the Begy Suit for counsel retained by American Family to shift facts to lay the basis for American Family to later deny coverage to McNaughton. To this end, American Family pointed out that it had reserved the right to deny coverage on the basis of, among other things, the timing of the damage to the Begys' home. American Family also pointed out that the Begys claimed that McNaughton had failed to properly construct their home and that, as a result, their home had suffered mold damage. This being the case, American Family argued that the Begys' claims did not raise an issue of when the damage occurred. Thus, American Family argued that there was no conflict, and, consequently, it should be permitted to appoint its own attorney to defend McNaughton in the Begy Suit.

In response, McNaughton argued that the Begys' claims did raise an issue of timing, which would be the subject of discovery in the Begy Suit. McNaughton argued that, if American Family were permitted to control the defense of the Begy Suit, then this discovery would be controlled by attorneys retained by American Family--attorneys, that is, with a long-standing financial relationship with American Family. Because, depending on what the discovery revealed as to timing, McNaughton could lose coverage under the Policy, McNaughton argued that there was a conflict.

Consequently, McNaughton argued, American Family should not be allowed to use its own attorneys to control McNaughton's defense in the Begy Suit.

The trial court rejected McNaughton's argument. Specifically, at a hearing on the parties' motions, the trial court found that there was no "clear conflict of interest," only a "possible or potential conflict of interest depending on what the discovery shows." The trial court explained:

"[A]t this point in time, it is clearly within the mutual interest of both W.H. McNaughton and American Family to find that *** there was no property damage of the type that is alleged; only if that question is *** answered in the affirmative would it possibly come into *** the issue of when the damage took place ***.

But at this point in time, [the court] do[es]n't think that there is a conflict of interest which would require or even permit the court to allow the appointment of independent counsel ***."

Having concluded that there was no present conflict, the trial court granted American Family's motion for judgment on the pleadings. McNaughton appeals.

## II. ANALYSIS

We begin with the standard of review. A motion for judgment on the pleadings is properly granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill. 2d 381, 385 (2005). Our review of the trial court's decision on a motion for judgment on the pleadings is de novo. M.A.K. v. Rush-Presbyterian-St.Luke's Medical Center, 198 Ill. 2d 249, 255 (2001).

The sole issue in this appeal is whether a conflict of interest exists between McNaughton and American Family that entitles McNaughton to be defended against the

Begys' allegations by an attorney of McNaughton's choosing. Before turning to that issue, however, it is helpful to begin our analysis with a word about an insurer's duty to defend its insured.

An insurer's duty to defend its insured is much broader than its duty to indemnify its insured. General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 154 (2005). If a complaint against an insured contains allegations that are even potentially within policy coverage, the insurer is obligated to defend the insured. *See Guillen v. Potomac Insurance Co. of Illinois*, 203 Ill. 2d 141, 150 2003 . Stated another way, an insurer may not justifiably refuse to defend its insured unless it is clear from the face of the complaint that the complaint has failed to allege facts potentially within the insured's policy coverage. Dixon Distributing Co. v. Hanover Insurance Co., 161 Ill. 2d 433, 439 (1994). In making this determination, the allegations of the complaint must be liberally construed in favor of coverage. Midwest Sporting Goods Co., 215 Ill. 2d at 155.

Here, the Begys allege in the underlying suit that McNaughton failed to properly apply an EIFS to their home (which McNaughton apparently built during 1991 and 1992) and that, as a result, their home suffered mold damage. Although the Begys' home was apparently built prior to the 1994 inception of the Policy, American Family has not alleged here that it does not have a duty to defend McNaughton. Rather, American Family argues that it should get to control McNaughton's defense. McNaughton, as noted, responds that there is a conflict of interest, and, because there is, McNaughton should be permitted to control its own defense by using its own attorney.

The conflict situation is an exception to the rule that the insurer, being charged with the duty of defending its insured, should be permitted to control the insured's defense.

Illinois Masonic Medical Center v. Turegum Insurance Co., 168 Ill. App. 3d 158, 163 (1988). Permitting the insurer to control the insured's defense allows the insurer to protect its financial interests and to minimize unwarranted liability. Turegum, 168 Ill. App. 3d at 163. At the same time, however, permitting the insurer to control the insured's defense may lead to problems. This is because, although an attorney retained by an insurer to represent its insured has ethical obligations to both parties, realistically he or she may have closer ties to the insurer and, consequently, a greater desire to protect the insurer's interests. Turegum, 168 Ill. App. 3d at 163. Of course, this is of no concern when the interests of the insurer and the insured are completely aligned. See, e.g., Clemmons v. Travelers Insurance Co., 88 Ill. 2d 469 (1981). But when those interests diverge, a problem arises. See, e.g., Murphy v. Urso, 88 Ill. 2d 444 (1981); Turegum, 168 Ill. App. 3d 158.

To determine whether there is a conflict, we must compare the allegations of the underlying complaint against the insured to the terms of the insurance policy at issue. Turegum, 168 Ill. App. 3d at 163. That complaint includes exhibits, such as contracts, which are attached to it. See Bianchi v. Savino Del Bene International Freight Forwarders, Inc., 329 Ill. App. 3d 908, 921 (2002). If, after comparing the complaint to the insurance policy, it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to "lay the groundwork" for a later denial of coverage, then there is a conflict between the interests of the insurer and those of the insured. See Clemmons, 88 Ill. 2d at 479. Put another way, if, in the underlying suit, insurer-retained counsel would have the opportunity to shift facts in a way that takes the case outside the scope of policy coverage, then the insured is not required to defend the underlying suit with insurer-retained counsel. See Clemmons, 88 Ill. 2d at 475; Nandorf, Inc. v. CNA Insurance Cos.,

134 Ill. App. 3d 134, 137 (1985). Rather, the insured is entitled to defend the suit with counsel of its choosing at the insurer's expense. See Nandorf, 134 Ill. App. 3d at 137 (noting that in conflict situations, "the insurer's obligation to defend is satisfied by reimbursing the insured for the costs of independent counsel").

Here, McNaughton argues, among other things, that there is a conflict because American Family's interests will be served if McNaughton is found liable in the Begy Suit for damage occurring prior to the inception of the Policy. The trial court rejected this argument, reasoning that (1) there was only a potential conflict, depending on what discovery in the Begy Suit showed; and (2) at this point, the interests of McNaughton and American Family are aligned, and they will diverge only if McNaughton is found liable. We take these points in reverse order.

With regard to the trial court's second point, it is not dispositive that McNaughton and American Family would both benefit from McNaughton's being found not liable in the Begy Suit. Indeed, an insurer and its insured will always have a shared interest in the insured's being absolved of liability. After all, if the insured is found not liable, then the insurer avoids the possibility of paying indemnification expenses down the road. But this is not the end of the inquiry. Instead, granting that the insurer and the insured have a shared interest in a finding of no liability, the question becomes whether the insurer's interest would be equally protected by a finding that would not be in the interest of the insured. If so, there is a conflict. See Murphy, 88 Ill. 2d at 453-54; Nandorf, 134 Ill. App. 3d at 138.

This is the lesson of the supreme court's decision in Murphy. There, a bus crashed, injuring a passenger. Murphy, 88 Ill. 2d at 448. The passenger sued both the bus driver and the bus owner. The passenger alleged that the owner was liable because the driver

was using the bus with the owner's permission. Murphy, 88 Ill. 2d at 449. If that was the case, then the driver would be covered as a permissive user under the owner's insurance policy. If, however, the driver was using the bus without permission, the driver would not be covered. Because coverage potentially extended to the driver, the owner's insurer had a duty to defend the driver. Murphy, 88 Ill. 2d at 453.

The supreme court found that the situation involved a conflict. Murphy, 88 Ill. 2d at 453-54. Specifically, the court pointed out that both the driver and the insurer shared an interest in the driver's being found not liable, but that the insurer's interests would be equally protected if the driver were found to have used the bus without permission. Murphy, 88 Ill. 2d at 453-54. If he had, then the policy would not extend to the driver; in other words, the insurer could not be liable for any damages resulting from the driver's conduct.

Similarly, in the present case, both American Family and McNaughton share an interest in McNaughton's being found not liable for any damage to the Begys' home. But American Family's interests would be equally served if McNaughton were found liable for damage that occurred prior to the Policy's inception in 1994. Thus, here, as in Murphy, although the insurer and the insured share an interest, their interests also diverge. Therefore, there is a conflict.

American Family argues that Murphy is distinguishable from the present case. To this end, American Family points out that, in Murphy, the issue of permission would be resolved in the underlying suit against the owner and the driver, because the driver's alleged permission to use the bus was the basis on which the passenger sought to hold the owner liable for the driver's conduct. Conversely, American Family argues, in the present

case the issue of the timing of the alleged damage to the Begys' home will not be resolved in the Begys' suit against McNaughton. Thus, American Family argues, Murphy does not support the conclusion that there is a conflict here.

There are two serious flaws in American Family's argument. First, the argument is inconsistent with the facts of this case. Although the Begys' complaint contains no dates (it alleges only poor workmanship and damages), the construction agreement between the Begys and McNaughton does contain dates (it states that work on the Begys' home was to occur during 1991 and 1992), and that agreement is attached to the Begys' complaint. As noted, exhibits attached to a complaint are considered to be part of that complaint. See Bianchi, 329 Ill. App. 3d at 921. Thus, American Family's argument that dates are not relevant to the underlying suit is factually inaccurate.

Second, American Family's argument makes no sense. According to American Family, the issues to be decided in the Begy Suit are limited to whether McNaughton performed work poorly and whether, as a result, the Begys' home was damaged. American Family argues that the question of when the alleged damage occurred is not relevant to the resolution of those issues. In other words, American Family argues that the Begys can prevail in a suit against McNaughton--a suit in which they allege that McNaughton's poor workmanship caused damage to their home--without establishing that the damage to their home stems from the time when McNaughton worked on their home. By that reasoning, a plaintiff could prevail in a suit claiming that he or she suffered injuries in a car crash, without having to establish that his or her injuries were related in time to the car crash. Put simply, that is absurd. Thus, for this reason too, we reject American Family's argument that dates are irrelevant in the Begy Suit.

Turegum further supports the conclusion that the trial court's reasoning on this point was mistaken. There, a patient was admitted to a hospital on three occasions, and she sued the hospital, alleging that, on one or more of those occasions, she received negligent treatment that caused her injury. Turegum, 168 Ill. App. 3d at 161. At the time of the patient's first admission, the hospital was covered by an insurance policy with Turegum. However, that policy lapsed prior to the patient's second and third admissions. Turegum, 168 Ill. App. 3d at 161. Nevertheless, because the policy potentially covered the hospital, Turegum had a duty to defend the hospital. At the same time, however, the court found that the situation involved a conflict. This was because Turegum's interest would be equally protected whether the hospital was found not liable or found liable for negligence occurring during the patient's second or third admission (that is, after the policy expired). Turegum, 168 Ill. App. 3d at 167-68.

Similarly, in this case, although McNaughton and American Family share an interest in McNaughton's being found not liable, American Family would do just as well if McNaughton were found liable for damage occurring before the inception of the Policy. Consequently, here, as in Turegum, there is a conflict.

Thus, the trial court erred in concluding that, because American Family and McNaughton shared some interests, there is no conflict. Having established as much, we turn to the trial court's first point, i.e., that there is no present conflict, but only a potential one depending on what is shown by discovery in the Begy Suit.

We disagree with that conclusion. A conflict already exists here. A conflict does not arise at the time a lack of coverage is unequivocally established. A conflict arises when the divergent interests of the insurer and insured are apparent and the attorney representing

˘12˘

the insured can no longer represent both clients' interests without prejudice to either client. A conflict already exists here because American Family's interests would be served by fleshing out in discovery facts showing that the damage to the Begys' home occurred prior to the inception of the Policy, while McNaughton's interests would be served by fleshing out facts showing that the damage occurred after the inception of the Policy. In this regard, an attorney representing American Family's interests would be the enemy of McNaughton. As the supreme court has said, "[a] ruling that required an insured to be defended by what amounted to his enemy in the litigation would be foolish." Murphy, 88 Ill. 2d at 454-55. Thus, McNaughton should not be forced to use American Family's attorneys to defend against the Begys' claims.

American Family attempts to undermine this conclusion by characterizing the above conflict as merely "hypothetical." Such a hypothetical conflict, American Family says, cannot form the basis for a finding that there exists a conflict between an insurer and its insured entitling the latter to retain independent counsel at the expense of the former. American Family finds support for this position in Shelter Mutual Insurance Co. v. Bailey, 160 Ill. App. 3d 146 (1987).

In Shelter Mutual, the insured's policy excluded intentional acts. Shelter Mutual, 160 Ill. App. 3d at 155. The insured was sued for negligence only. The court noted that conflicts of interest have been found when a complaint alleged multiple theories of recovery against an insured, only some of which were covered by an insurance policy. Shelter Mutual, 160 Ill. App. 3d at 153-54. In those cases, the court explained, a conflict stemmed from the fact that the insurer's interest would be served if the insured were found liable under a noncovered theory. Shelter Mutual, 160 Ill. App. 3d at 155. However, the court

found that the case before it did not fall into that category. This was because only one theory of recovery was alleged and liability based on that theory was covered by the policy. Shelter Mutual, 160 Ill. App. 3d at 155. The court rejected the idea that a conflict existed because the complaint, at least in theory, could be amended to include a claim that the insured acted intentionally (a claim, that is, that would not be covered by the policy). In doing so, the court reasoned that if, even though the complaint against the insured alleged only negligence, a potential conflict existed entitling the insured to hire his own attorney, "then in any negligence action an insured could claim that an intentional or wilful and wanton count could be added to the complaint at any time, thereby requiring the insurance company to turn the defense over to another attorney." Shelter Mutual, 160 Ill. App. 3d at 155.

Shelter Mutual is easily distinguished from the present case. Here, the "hypothetical" discovery to which American Family refers likely includes, among other things, questions relating to the timing of the alleged damage to the Begys' home. As discussed above, the question of the timing of the damage to the home will almost certainly come up in the underlying suit. Thus, there is no merit to American Family's suggestion that discovery relating to the theory of recovery alleged in the complaint is analogous to unpled, hypothetical theories of recovery. Accordingly, its reliance on Shelter Mutual is misplaced.

In sum, the trial court erred in finding that there was no conflict. Therefore, the trial court erred in finding that McNaughton was not permitted to retain its own legal counsel to defend it against the Begys' allegations at American Family's expense.[2]

---

[2]McNaughton raises several additional arguments. For example, McNaughton notes that,

after the record in this case was certified on appeal, the Begys amended their complaint to allege that they did not discover the problems with their home until September 2001. McNaughton argues that we can take judicial notice of the amended complaint, and that the Begys' allegation as to the date of discovery provides further support for McNaughton's position that the timing of the alleged damage is in issue in the Begy Suit, and, therefore, a conflict exists. Shifting gears, McNaughton argues that, in addition to the timing-of-the-damage issue, the Begy Suit involves questions of when McNaughton knew of the alleged damage to the Begy home and whether that damage was caused by mold after 2002. For these reasons, too, McNaughton argues that there is a conflict. Our conclusion that a conflict exists based on the timing-of-the-damage issue, and that this is so based on the Begys' initial complaint, makes it unnecessary to consider these additional arguments.

### III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

CALLUM and GILLERAN JOHNSON, JJ., concur