In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3110

NATIONAL CASUALTY COMPANY,

*Plaintiff-Appellee,*

*v.*

FORGE INDUSTRIAL STAFFING
INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CV 3745—**James F. Holderman**, *Chief Judge.*

ARGUED FEBRUARY 10, 2009—DECIDED JUNE 3, 2009

Before CUDAHY, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Fearful that its insurer, National Casualty Corporation ("NCC"), would surreptitiously control its defense in a way that would preclude coverage under the insurance policy, Forge declined to accept insurer-appointed counsel to defend it against claims brought before the Equal Opportunity Employment

Commission ("EEOC"). The parties then filed cross-claims for declaratory judgment seeking to resolve whether an actual conflict of interest existed requiring NCC to reimburse Forge for the costs of retaining independent counsel to defend against these EEOC charges.

Because we find that the EEOC charges do not contain mutually exclusive claims (one of which would be covered under the policy and one of which would not), and we fail to detect any other evidence that NCC would provide a less than vigorous defense on behalf of Forge, we find that under Illinois law, appointment of conflict counsel was not required. Therefore, we affirm the district court's judgment.

## I. BACKGROUND

This suit arises out of a dispute regarding the burden of bearing the defense costs of an insured's privately retained counsel in an action before the EEOC. NCC issued an insurance policy to Forge Industrial Staffing, Inc. Forge is a staffing company that places temporary, and occasionally permanent, employees at companies throughout the United States. Among other things, the policy insured Forge against any legal damages stemming from intentional acts, including intentionally discriminating against any of its employees. The parties do not dispute any of the following facts.

During February and April 2006, four of Forge's former employees filed anti-discrimination charges with the EEOC. The gist of their complaints was that Forge fired them: (1) due to their race and/or gender; and/or (2) in

retaliation for complaining about Forge's staffing practices, which allegedly included honoring its clients' requests not to staff employees that were African-American, Hispanic, and/or female.

As a result of these charges, NCC agreed to defend Forge under the Employment Practices Liability Part of the insurance contract and assigned NCC's own counsel to do so. At the same time, NCC reserved the right to later deny coverage based on any of the exclusions in the policy. Most notably, the policy did not provide coverage for "punitive damage awards" or for any claim arising out of Forge's "willful failure . . . to comply with any law . . . or regulations relating to employment practices." The policy defined "willful" as "acting with intentional or reckless disregard for such employment-related laws, orders or regulations."

After receiving this reservation-of-rights letter, Forge requested that NCC provide independent counsel for Forge because a purported conflict of interest existed as a result of NCC's reservation of rights. Specifically, Forge asserted that whether the policy would indemnify Forge for its alleged conduct depended on how the EEOC charges were defended with respect to the issues of punitive damages and Forge's knowledge of the applicable anti-discrimination laws. When NCC refused to provide independent counsel, Forge hired its own counsel. Subsequently, NCC filed this declaratory judgment action to resolve the conflict of interest issue as well as a dispute regarding the appropriate deductible under the policy. Forge cross-filed, requesting that the district court order NCC to cover Forge's defense costs. The district court found that no

actual conflict existed and determined that Forge had to bear the costs of retaining its own counsel. The district court also found that only the Employment Practices Liability Part of the policy applied, requiring Forge to pay a $25,000 deductible to NCC. Forge now appeals.

## II. ANALYSIS

### A. Conflict of Interest Determination

In Illinois, an insurer has a broad duty to defend its insured in any action where the allegations in the complaint are even potentially within the scope of the policy's coverage. *Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 7 (Ill. 2003); *Am. Family Mut. Ins. Co. v. W. H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 497 (Ill. App. Ct. 2006). Along with an insurer's obligation to defend its insured comes its right to control and direct the defense. *Am. Family*, 843 N.E.2d at 498. Policy dictates that an insurer has this right so that it "may protect its financial interest in the litigation's outcome and minimize unwarranted liability claims." *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 644 (Ill. App. Ct. 2008); *see also Clemmons v. Travelers Insurance Co.*, 430 N.E.2d 1104, 1108 (Ill. 1981). Insurer-appointed counsel has an ethical obligation to both the insurer and the insured. *Stoneridge*, 888 N.E.2d at 644; *Am. Family*, 843 N.E.2d at 498. However, in reality this counsel may have a closer relationship with the insurer and a greater desire to protect the insurer's interests. *Ill. Masonic Med. Ctr. v. Turegum Ins. Co.*, 522 N.E.2d 611, 613 (Ill. App. Ct. 1988). This is of no import when the interests of the insurer and its insured are

aligned, but when they diverge, a conflict of interest arises. *Am. Family*, 843 N.E.2d at 498.

If there is an actual conflict of interest between the insurer and insured, the insured has the right to obtain independent counsel at the insurer's expense. *See id.*; *Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 31 (Ill. 1976). An actual, not merely potential, conflict is required to trigger the insured's right to conflict counsel. *See, e.g., Murphy v. Urso*, 430 N.E.2d 1079, 1083-84 (Ill. 1981); *Am. Country Ins. Co. v. Williams*, 791 N.E.2d 1268, 1276 (Ill. App. Ct. 2003). An actual conflict does not arise merely because the insurer has an interest in negating coverage as to every count of the underlying complaint. *See, e.g., Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1047 (7th Cir. 1987); *Turegum*, 522 N.E.2d at 613-14. Conversely, it is not dispositive that insurer and insured have a shared interest in a finding of no liability; in that case, "the question becomes whether the insurer's interest would be equally protected by a finding that would not be in the interest of the insured." *Am. Family*, 843 N.E.2d at 499; *Murphy*, 430 N.E.2d at 1083-84.

In order to determine if a conflict exists, the court "must compare the allegations of the underlying complaint against the insured to the terms of the insurance policy at issue." *Am. Family*, 843 N.E.2d at 498. If, after comparing the complaint against the insured to the insurance policy, "it appears that factual issues will be resolved in the underlying suit that would allow insurer-retained counsel to 'lay the groundwork' for a later denial of coverage, then there is a conflict between the interests of the insurer and those of the insured." *Id.* (citations omitted).

Illinois courts have held that conflict counsel must be appointed when the underlying complaint contains two mutually exclusive theories of liability, one which the policy covers and one which the policy excludes. *See, e.g.,* *Maniekis v. St. Paul Ins. Co. of Ill.*, 655 F.2d 818, 825 (7th Cir. 1981) (collecting Illinois cases). This situation typically arises when the insurance policy covers negligent but not intentional conduct. *Id.* In this instance, the insurer would have the incentive to lay the groundwork during discovery to show that the insured acted intentionally, removing the possibility of coverage*. See Am. Family*, 843 N.E.2d at 498 ("[I]f, in the underlying suit, insurer-retained counsel would have the opportunity to shift facts in a way that takes the case outside the scope of policy coverage, then the insured is not required to defend the underlying suit with insurer-retained counsel."). More generally, courts have found that conflict counsel should be appointed whenever the insurer's "interests would be furthered by providing a less than vigorous defense to those allegations." *Turegum*, 522 N.E.2d at 613-14; *see also Am. Country*, 791 N.E.2d at 1276.

### B.    The Mere Possibility that Punitive Damages Might Be Sought in Future Litigation Does Not Create an Actual Conflict of Interest

Forge asserts, relying on *Nandorf, Inc. v. CNA Insurance Cos.*, 479 N.E.2d 988 (Ill. App. Ct. 1985), that the possibility that the EEOC charges could result in lawsuits in which the plaintiffs might request punitive damages that dwarf the

possible compensatory damages creates an actual conflict of interest mandating the appointment of conflict counsel. In *Nandorf*, each underlying plaintiff requested $5,000 in compensatory damages and $100,000 in punitive damages. *Id*. at 990. As here, the policy in question did not cover punitive damage awards. *See id*. The court reasoned that an insurer may not have an incentive to provide a "vigorous defense" to its insured when the amount of punitive damages sought greatly outweighs the amount of compensatory damages sought. *Id*. at 992. Essentially, the court believed that the insurer (and by extension insurer-appointed counsel) might find it more economically efficient to put on a less than vigorous defense and pay the $5,000, rather than spending excess legal fees to put on a full defense. *Id*. Such conduct would leave the insured unfairly exposed for $100,000 in punitive damages.

Although the court cautioned that its finding was not "meant to imply that an insured is entitled to independent counsel whenever punitive damages are sought in the underlying action," it found that "under the peculiar facts and circumstances of this litigation," the great disparity between the punitive and compensatory damages possible in the underlying litigation created an actual conflict warranting the appointment of conflict counsel. *Id*. at 993-94; *see also Ill. Mun. League Risk Mgmt. Ass'n v. Siebert*, 585 N.E.2d 1130, 1138 (Ill. App. Ct. 1992) (finding that where insurer "could benefit from presentation of defense in manner justifying punitive damages award" and insured faced "grave economic consequences" as a result, appointment of conflict counsel was warranted).

As the district court correctly found, this case does not present "peculiar facts" analogous to *Nandorf* requiring the appointment of independent counsel. Punitive damages may not be sought in an EEOC proceeding. *See West v. Gibson*, 527 U.S. 212, 217-18 (1999). Further, there was no evidence that the underlying plaintiffs would seek punitive damages if and when they actually filed suit. Moreover, even if they filed suit, there is no evidence that the punitive damages requested would be so disproportionate to the compensatory damages requested such that a *Nandorf* conflict would ensue. Therefore, the specter of punitive damages in this case is merely speculative and does not create an "actual" conflict. *See Littlefield v. McGuffey*, 979 F.2d 101, 108 (7th Cir. 1992). To find otherwise would violate the principles underlying *Nandorf* by immediately mandating the appointment of conflict counsel in every case in which punitive damages potentially might be requested. Not until punitive damages are actually requested (or an actual conflict appears on the face of the complaint as discussed *infra* at 9-15), and upon a determination that the nature of the damages creates a conflict (i.e., when the conflict changes from speculative to actual), should a court order the appointment of independent counsel. *See Shelter Mut. Ins. Co. v. Bailey*, 513 N.E.2d 490, 496 (Ill. App. Ct. 1987).

In addition, unlike in *Siebert*, there is no evidence that Forge and NCC's interests are not aligned on the issue of punitive damages. In the event that the EEOC charges evolve into lawsuits, both punitive and compensatory damages would be tied to the same underlying conduct, namely Forge's alleged discrimination against its employ-

ees. Thus, in defending Forge's actions generally, NCC would necessarily be protecting Forge's interests with respect to both compensatory and punitive damages. *See Vill. of Lombard v. Intergovernmental Risk Mgmt. Agency*, 681 N.E.2d 88, 95 (Ill. App. Ct. 1997) ("the compensatory and punitive damages sought in the underlying suit arise out of the same factual occurrence" and did not present a actual conflict). The mere potential for massive punitive damages requests in future litigation does not give rise to an actual conflict warranting the appointment of independent counsel.

**C.  Independent Counsel Need Not Be Appointed Because Mutually Exclusive Theories of Liability Do Not Appear on the Face of the EEOC Charges**

It is undisputed that the policy provides Forge liability coverage for intentional acts, including intentional torts such as intentionally discriminating against one of its employees. As noted above, however, the policy does not cover Forge if it "willfully failed" to adhere to anti-discrimination laws. If a jury was to find that Forge both intentionally discriminated against its employees and did so in willful violation of anti-discrimination laws, Forge's conduct would fall within the policy's "willful" exception, and NCC would not have to indemnify Forge. Forge argues that appointment of independent counsel at the inception of the EEOC charges was necessary because NCC's counsel would have the incentive and ability to shift the facts such that it appeared that Forge willfully violated the law, removing the action from the policy's coverage. As the

district court aptly noted, whether NCC-appointed counsel's ability to frame facts before the Commission creates an actual conflict triggering the need for conflict counsel presents "a difficult question" under the facts of this case.

After the district court determined that NCC had a duty to defend Forge in the EEOC proceedings, it stated that if an actual conflict existed at the EEOC level, conflict counsel must be appointed.[1] The district court then found that no actual conflict existed because: (1) the EEOC charges did not specifically accuse Forge of "willfully violating any law"; and (2) in any event, "intentional claims" and any "willfully violating the law claims" would not be mutually exclusive—by generally defending Forge against discrimination charges, the district court found that the NCC-supplied defense would encompass both "intentional claims" and "willful claims."

On appeal, building on the district court's rationale, NCC first argues that there is no conflict between the intentional conduct alleged in the EEOC charges and the "willfulness" exception in the policy. NCC claims that in defending Forge against a claim for intentional discrimination, it will necessarily be defending Forge against allegations that Forge willfully violated anti-discrimination laws.

Although correct, this argument does not dispositively settle the question of whether conflict counsel must be

---

[1]  Although not disputed on appeal, we note that due to the adversarial nature of the EEOC process, the conflict counsel doctrine is equally applicable to EEOC charges/proceedings as it is to a formal lawsuit.

appointed for the EEOC proceedings. At trial before a district court, it is certainly true that if counsel proves that Forge did not intentionally discriminate against its employees then it necessarily proves that Forge did not willfully violate the law, which would negate any tension with the policy's exceptions.[2] Further, any attempt to shift the focus to Forge's knowledge of the applicable anti-discrimination laws during trial would be plain to see, rendering counsel's violation of his ethical duty apparent. That said, an examination of the manner in which counsel would defend this action at trial is not the complete, nor even the most pertinent, inquiry. Rather, Illinois law counsels us to examine whether insurer-appointed counsel could feasibly "flesh out" certain facts during investigation, discovery, or trial that would remove the action from the policy's coverage. *See Am. Family*, 843 N.E.2d at 500-01; *Turegum*, 522 N.E.2d at 622; *Murphy*, 430 N.E.2d at 1083-84.

During its defense of the charges in the EEOC proceeding, it is certainly possible for NCC-appointed counsel to subtly elicit facts tending to show that Forge had knowledge of the applicable anti-discrimination laws, which would negate NCC's obligation to insure Forge in the event that Forge is found liable for discrimination. That said, the danger this presents to Forge is quite minimal given that

---

[2] NCC's contention that defending against intentional discrimination will *always* be the same as defending against a willful violation of the law is without merit. If that was the case, then the willfulness exclusion in the policy would serve no purpose.

this information is highly likely to be discovered anyway. As an employment placement company, one would assume that Forge has strong knowledge of employment laws and, as such, the underlying plaintiffs or the Commission itself will likely inquire about Forge's knowledge of those laws during the EEOC process. Or, if NCC decided to initiate a separate action against Forge claiming that the policy did not apply, NCC would certainly inquire about Forge's knowledge of the law during discovery. Therefore, NCC-appointed counsel's ability to solicit this information during his defense of the EEOC charges is of little import.

In any event, given that there are no allegations present in the EEOC charges that Forge willfully violated the law, this case presents neither mutually exclusive theories of liability nor factual allegations which when resolved would preclude coverage. In fact, only one theory is presented—Forge committed an intentional tort by intentionally discriminating against its employees based on race and gender. So, the requirements for appointment of independent counsel under Illinois law have not been met.

A similar situation arose in *Shelter Mutual Insurance Co. v. Bailey*, 513 N.E.2d 490 (Ill. App. Ct. 1987). In *Shelter Mutual*, an insured asked the court to order the appointment of conflict counsel in a case where the insured was charged with negligence and the policy excluded coverage for intentional acts. *Id*. at 496-97. The insured argued that insurer-appointed counsel could elicit facts tending to show that the insured acted intentionally, thus negating coverage. *Id*. The court found that no actual conflict of interest existed because only one theory of liability, negligence, was alleged

on the face of the complaint. *Id*. at 496-97 ("Plaintiff was not confronted with alternative theories of recovery and, therefore, could not shift the liability from one theory, such as negligence, which would have been covered, to another theory, such as battery or intentional conduct, for which there was no coverage."). Finding that there was nothing on the face of the complaint indicating that insurer-appointed counsel would give less than a vigorous defense, the court denied the insured's request for independent counsel. *Id*. The court noted, however, that if the underlying plaintiff was to file an amended complaint featuring an intentional tort, an actual conflict might ensue requiring the appointment of conflict counsel. *Id*.

The court's decision was wise because, as it noted, a contrary ruling would require the appointment of independent counsel any time a complaint could foreseeably be amended to assert a non-covered theory. *Id*. Such a rule would extend the requirement for appointment of independent counsel to any situation that presents merely a potential conflict, which is clearly antithetical to what Illinois law dictates.

Simply put, if no fact issues appear on the face of the underlying complaint that can be conclusively resolved in such a way that insurance coverage is necessarily precluded under the policy, then appointment of independent counsel is not warranted. *Id*.; *Am. Family*, 843 N.E.2d at 498. In this case, the EEOC charges do not contain any specific fact issues that could conclusively be resolved such as to preclude coverage under the policy. The EEOC charges do not contain any claims that Forge willfully violated the law

nor do they contain any fact allegations regarding Forge's knowledge of anti-discrimination laws. As such, an actual conflict is not present that requires the appointment of conflict counsel. Forge seems to argue that NCC-appointed counsel's ability to inquire into Forge's knowledge of the applicable laws puts it at some sort of advantage. This is not the case. In the cases in which Illinois courts have required the appointment of independent counsel, there have been crucial facts alleged on the face of the complaint which, if proven true, completely and irreparably took the matter out of the scope of the insurance policy's coverage. *See, e.g.*, *Am. Family*, 843 N.E.2d at 498; *Turegum*, 522 N.E.2d at 613-14; *Murphy*, 430 N.E.2d at 1082-83.

If, in this case, there was an allegation in the EEOC charges that Forge willfully violated the law in the process of discriminating against its employees, the fact that Forge's knowledge of the law may be unearthed as part of the EEOC grievance process may warrant the appointment of conflict counsel because it is conceivable that a finding on this issue could be reached that dispositively determines that the policy does not indemnify Forge. Without such an allegation present on the face of the complaint, however, any theory that may shift the facts in such a manner as to foreclose coverage is entirely speculative and presents, at most, a potential (and not actual) conflict. Moreover, the fact that NCC can use information garnered in the course of this EEOC proceeding in a parallel proceeding alleging non-coverage is irrelevant because the same information could be obtained through the normal discovery process in the parallel suit. *Id*. at 496 ("A conflict

cannot be inferred merely because an insurance company is asserting noncoverage in a separate suit. The test is whether or not there are conflicting interests based upon the allegations found in the complaint."). In this case, only in the event that these EEOC charges are amended to include allegations of willfulness, or evolve into actual lawsuits whose complaints contain allegations regarding Forge's willfulness, will an actual conflict arise. Until that time, the appointment of conflict counsel is not warranted under Illinois law.

### D.    Only the Employment Practices Liability Part of the Insurance Policy is Applicable

NCC provided insurance coverage under the Employment Practices Liability Part of the insurance policy, which carried a $25,000 deductible. Forge claims that the Professional Liability Coverage Part also applied, which only carried a $5,000 deductible. As the district court correctly found, the Professional Liability coverage does not apply because "Exclusion 13" in the Professional Liability Part exempts from coverage any claims alleging "wrongful termination," "actual discrimination," or "retaliatory treatment."

In its opening brief, Forge makes no attempt to refute the district court's finding. In its reply brief, Forge argues, without citation or support, that this exclusion was only meant to apply to the employees Forge placed at outside companies and not its in-house employees. A plain reading of Exclusion 13 fails to support this premise. So, Forge

must pay the $25,000 deductible applicable under the Employment Practices Liability Part.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.