2019 IL App (1st) 181501

FIRST DISTRICT
SIXTH DIVISION
May 3, 2019

No. 1-18-1501

| | | |
|---|---|---|
| XTREME PROTECTION SERVICES, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CH 4818 |
| | ) | |
| STEADFAST INSURANCE COMPANY, | ) | Honorable |
| | ) | Diane J. Larsen, |
| Defendant and Counterplaintiff-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

## OPINION

¶ 1     Defendant, Steadfast Insurance Company (Steadfast), appeals the order of the trial court finding that plaintiff, Xtreme Protection Services, LLC (Xtreme), had the right to select an independent attorney to defend it in the underlying action due to a conflict of interest with Steadfast. On appeal, Steadfast contends that the court's determination was erroneous where (1) no conflict of interest existed because Steadfast waived every coverage defense other than noncoverage for punitive damages and (2) Xtreme forfeited its right to a defense by breaching its duty to cooperate. For the following reasons, we affirm.

¶ 2                               I. JURISDICTION

¶ 3     On April 16, 2018, the trial court entered a declaratory judgment on the pleadings as to count I of Xtreme's first amended complaint and Steadfast's first amended counterclaim. On June 12, 2018, the trial court granted Steadfast's motion for a finding of appealability pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Accordingly, this court has jurisdiction

pursuant to Rule 304(a) governing appeals from final judgments as to fewer than all parties or claims.

¶ 4                                II. BACKGROUND

¶ 5     In September 2016, David Israel filed a complaint, Israel v. Bucon, No. 16 L 9348 (Cir. Ct. Cook County) (Sept. 22, 2016), alleging assault and intentional infliction of emotional distress against Michael Bucon. The complaint alleged that Bucon placed listening devices in Israel's office, attached GPS devices to his vehicles, and sent threatening or harassing text messages. As a result, Israel "sustained severe and permanent injuries, endured great pain and suffering, incurred medical expenses, lost time from work," and suffered "severe emotional distress." Israel sought compensatory damages in an amount greater than $50,000 and unspecified punitive damages.

¶ 6     On October 20, 2016, Israel filed a first amended complaint (Israel v. Bucon, No. 16 L 9348 (Cir. Ct. Cook County) (Oct. 20, 2016)) that added two defendants—Xtreme and its sole member-manager, James Adams. The complaint alleged that Bucon acted as an agent of Xtreme and Adams, and it asserted Israel's claims against all three defendants. The complaint again sought compensatory damages in an amount greater than $50,000, along with unspecified punitive damages. On February 22, 2017, Israel filed a second amended complaint (Israel v. Bucon, No. 16 L 9348 (Cir. Ct. Cook County) (Feb. 22, 2017)) that added a claim for eavesdropping.

¶ 7     On August 9, 2017, Israel filed a third amended complaint (Israel v. Bucon, No. 17 L 6026 (Cir. Ct. Cook County) (Aug. 9, 2017)), which was the ultimate pleading the trial court considered when it granted Xtreme's motion for judgment on the pleadings. The third amended complaint alleged claims of electronic eavesdropping, surveillance and sending threatening or

harassing text messages, federal wiretapping, eavesdropping, intrusion upon seclusion, intentional infliction of emotional distress, and trespass. The complaint alleged the following damages:

| Claim | Damages |
|---|---|
| I. Eavesdropping | "an amount not less than $30,000" |
| II. Intentional Infliction of Emotional Distress | "nominal actual damages;" punitive damages "not less than $50,000;" |
| III. Outrage | "nominal actual damages;" punitive damages "not less than $50,000" |
| IV. Federal Wiretapping | "an amount not less than $30,000" |
| V. Intrusion Upon Seclusion | "an amount not less than $30,000, and punitive damages in the amount of $1 million" |
| VI. Trespass | "an amount not less than $30,000 and punitive damages in the amount of $1 million." |

¶ 8    During the relevant time period, Xtreme possessed an "armed security services" policy issued by Steadfast with a policy limit of $1 million. The policy provides that Steadfast would indemnify Xtreme against (1) "sums that the insured becomes legally obligated to pay as damages resulting from errors or omissions in the conduct of [Xtreme's] business" and (2) liability for "bodily injury and property damage." The policy also contains two relevant exclusions. First, coverage does not apply to bodily injury or property damage "expected or intended from the standpoint of the insured" when there is "a final adjudication or admission by an Insured that the act or omission was intentional, criminal, fraudulent, malicious or dishonest." The policy also excludes coverage for punitive damages. The policy further provides that the insured must cooperate in the investigation or settlement of the claim or defense against the suit.

¶ 9      On December 16, 2016, Xtreme's counsel tendered the underlying complaint to Steadfast and requested coverage under the policy. Steadfast informed Xtreme that it would be "retaining counsel to defend [Xtreme] in the case." Steadfast made no reservation of rights to deny coverage. On December 21, 2016, Xtreme's counsel responded that "the allegations of the amended complaint and the policy provisions create an inherent conflict" where Steadfast was required to defend against claims of intentional conduct but would be excused from coverage in the event the conduct was adjudicated or admitted as "intentional, criminal, fraudulent, malicious or dishonest." Xtreme requested permission from Steadfast to choose its own counsel to remedy the conflict of interest. In response, Steadfast stated that it was "in the midst of retaining counsel to defend our insured" and wanted to discuss the underlying facts with the insured directly. Steadfast stated that "the coverage issues referenced could be the subject of reservation of rights on our part" although Steadfast "may opt to waive these issues."

¶ 10      On January 17, 2017, Xtreme's counsel sent an e-mail again referencing the conflict of interest and Steadfast's failure to issue a coverage letter or make any reservation of rights. The letter further stated that "[i]t is now more than a month since the claim was tendered, and Xtreme and Mr. Adams have been forced to protect their interests in the litigation on their own. They will continue to do so, but expressly reserve the right to seek reimbursement from [Steadfast] for all attorneys' fees, costs, and any other damages from the failure to defend and afford proper coverage."

¶ 11      On March 28, 2017, Steadfast sent an e-mail summarizing its coverage of the Israel litigation. Steadfast specifically noted the policy's exclusion of coverage for punitive damages. Steadfast also reserved "all rights and defenses available under the Policy and at law to deny coverage" and its right "to supplement its coverage position based upon any facts not presently

in its possession." Steadfast appointed counsel to defend Xtreme in the underlying action. An e-mail advised that Steadfast's designated attorney would be "substituting into the case" and Steadfast expected Xtreme "to cooperate with our chosen counsel in substituting into the case to defend [Xtreme]." Xtreme, however, advised Steadfast's chosen counsel to "take no action" pending its review of Steadfast's letter.

¶ 12     Xtreme continued to defend the underlying suit with its chosen attorney and on April 3, 2017, filed a declaratory judgment action. Count I sought a declaration that Xtreme was authorized to select its own attorney due to a conflict of interest arising from Steadfast's reservation of rights regarding intentional acts and punitive damages. On April 14, 2017, Steadfast sent a letter to Xtreme's counsel to clarify coverage concerns. In the letter, Steadfast stated that

> "Steadfast agrees that it will defend and indemnify Xtreme, up to the policy limits, for any judgment for compensatory damages *** (subject only to any potential other insurance which may provide primary or concurrent coverage awarded, and Xtreme's compliance with the conditions of the [ ] policy). Steadfast will not assert any exclusions or other defense to coverage."

The letter further stated that there is "clearly no conflict between Steadfast and Xtreme with regard to the defense of the case, and Steadfast has the right to appoint counsel and control the defense of Xtreme." The letter also advised that Steadfast reserved its right to deny coverage of punitive damages.

¶ 13     Steadfast filed a counterclaim for declaratory judgment, alleging that it no longer had to honor its policy because Xtreme breached the policy's cooperation clause when it advised Steadfast's chosen counsel to "take no action" until further review. Steadfast argued it was

prejudiced where Xtreme denied it "the right to participate in and control the defense of [Xtreme] in the underlying Lawsuit." Steadfast contended that a conflict no longer existed when it waived all reservation of rights except for punitive damages.

¶ 14    Xtreme filed a motion for judgment on the pleadings, and Steadfast filed a cross-motion for judgment. The trial court determined that Xtreme was entitled to select its own attorney due to Steadfast's reservation of rights regarding punitive damages and the risk of a substantial punitive damages award. The court denied Steadfast's cross-motion for judgment on the pleadings. The trial court also made a finding pursuant to Rule 304(a) that "there is no just reason for delaying enforcement or appeal," and Steadfast filed its appeal.

¶ 15    While the appeal was pending, Israel filed a fifth amended complaint,[1] and Steadfast obtained leave to supplement the record with that complaint. The claims and damages set forth in the fifth amended complaint are as follows:

| Claim | Damages |
| --- | --- |
| I. Eavesdropping | "an amount not less than $200,000" and punitive damages |
| II. Intentional Infliction of Emotional Distress | "actual damages, including pain and suffering, and punitive damages not less than $1 million" |
| III. Federal Wiretapping | "not less than $200,000" |
| IV. Intrusion upon Seclusion | "$200,000, punitive damages in the amount of $1 million" |
| V. Trespass | "$200,000 and punitive damages in the amount of $1 million" |
| VI. Conspiracy | "compensatory damages and punitive damages, not less than $1 million." |

---

[1]That action remains pending in the Northern District of Illinois. Israel v. Bucon, No. 17 CV 6452 (N.D. Ill. Sept. 7, 2017) (consolidated with Israel v. Israel, No. 17 CV 6643 (N.D. Ill. Sept. 14, 2017)).

¶ 16                                    III. ANALYSIS

¶ 17    On appeal, Steadfast contends the trial court erred in granting judgment in favor of Xtreme where no conflict of interest exists that would authorize Xtreme to select its own attorney. Judgment on the pleadings is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). We review the trial court's grant of judgment on the pleadings *de novo*. *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001).

¶ 18    An insurer has a duty to defend its insured as long as the complaint contains allegations that are within or potentially within the policy's coverage. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55 (2005). If the underlying complaint alleges several theories of recovery, the insurer's duty to defend arises even if only one of those theories is within the policy's potential coverage. *Id.* at 155. Thus, the insurer's duty to defend is much broader than its duty to indemnify. *Id.* at 154.

¶ 19    With the duty to defend comes the insurer's right to control the defense and protect its financial interest in the outcome of the litigation. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 163 (1988). An attorney retained by the insurer to defend its insured "owes a fiduciary duty and has the same professional obligations to the insured as would exist had he or she been personally retained by the insured." *Id.* at 163. Courts have acknowledged, however, that in reality the insurer's attorney "may have closer ties with the insurer and a more compelling interest in protecting the insurer's position." (Internal quotation marks omitted.) *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d 134, 137 (1985). When the interests of the insurer and the insured are not aligned, ethical issues regarding the insured's

representation may arise. *American Family Mutual Insurance Co. v. W.H. McNaughton Builders, Inc.*, 363 Ill. App. 3d 505, 511 (2006).

¶ 20    When a conflict of interest exists, it "may be resolved by full disclosure and consent from the parties." *Nandorf*, 134 Ill. App. 3d at 137. However, if the insured rejects the insurer's offer to defend under a reservation of rights, courts recognize a limited exception to the general rule that the insurer has a right to control the defense. *Id.* In this situation, the insured is entitled to control the defense and "by reason of its contractual obligation to furnish a defense, the insurer must underwrite the reasonable costs incurred by the insured in defending the action with counsel of his own choosing." *Illinois Masonic*, 168 Ill. App. 3d at 163. To determine whether a conflict of interest exists, we compare the allegations in the complaint to the policy and consider whether the insurer's interests "would be furthered by providing a less-than-vigorous defense to those allegations." *Nandorf*, 134 Ill. App. 3d at 137.

¶ 21    Courts have found a conflict when the facts to be resolved in the underlying case would allow the insurer-retained counsel to "lay the groundwork" for a subsequent denial of coverage. *American Family*, 363 Ill. App. 3d at 511. In *American Family*, a conflict existed because the insurer's interests would be served by facts showing that the damage to the insured's home occurred prior to the policy's effective date, while the insured's interests would be served by showing that the damage occurred after the inception of the policy. *Id.* at 514. A conflict can also exist if the underlying suit seeks, in addition to compensatory damages, punitive damages based on intentional or reckless conduct where the insurer's policy explicitly denies coverage for such conduct. In such cases, it is in the interest of the insured to be found negligent because the resulting damages would be covered by the policy, but it is in the insurer's interest to have a finding that the insured acted intentionally or with malice. *Maryland Casualty Co. v. Peppers*, 64

Ill. 2d 187, 197 (1976); *Illinois Municipal League Risk Management Ass'n v. Seibert*, 223 Ill. App. 3d 864, 877-78 (1992).

¶ 22    Here, the underlying complaint alleges that Israel suffered damages when Xtreme's employee placed listening devices in Israel's office, attached GPS devices to his vehicles, and sent threatening or harassing text messages. Steadfast's policy with Xtreme excludes coverage for "intentional, criminal, fraudulent, malicious or dishonest" acts. Steadfast argues, however, that no conflict exists because it explicitly waived its right to deny coverage for compensatory damages based on these acts. While Steadfast's waiver may have resolved one type of conflict, Steadfast's continuing reservation of its right to deny coverage for punitive damages presents another area of potential conflict.

¶ 23    In *Nandorf*, the plaintiffs in the underlying complaint alleged that employees of Unique Thrift Shop seized their persons and "imprisoned and incarcerated said plaintiffs for many hours against their will and consent." (Internal quotation marks omitted.) *Nandorf*, 134 Ill. App. 3d at 135. The complaint sought $5000 in compensatory damages and $100,000 in punitive damages for each plaintiff. Nandorf tendered the defense of the action to CNA Insurance Companies (CNA) pursuant to a comprehensive liability insurance policy. CNA retained counsel to defend the action but informed Nandorf that any award of punitive damages would be Nandorf's responsibility since "it is against the public policy of the State of Illinois to provide insurance coverage for punitive damages." (Internal quotation marks omitted.) *Id.* Nandorf retained independent counsel, who requested that CNA waive its reservation of rights as to punitive damages or, if it refused to do so, Nandorf's chosen counsel would take control of the defense. *Id.* CNA declined to waive its rights and refused to relinquish control of the litigation or reimburse Nandorf for the costs of retaining independent counsel. *Id.* at 135-36. Nandorf sought

reimbursement and filed a declaratory judgment action, which the trial court dismissed. CNA eventually settled the underlying suit.

¶ 24    This court reversed the dismissal, finding that a conflict existed where CNA disclaimed liability for punitive damages and the underlying action sought a large punitive damages amount and a relatively small amount of compensatory damages. *Id.* at 138. The court noted that although Nandorf and CNA "shared a common interest in a finding of no liability," if Nandorf was found liable, "their interests diverged" because "CNA's interests would have been just as well served by an award of minimal compensatory damages and substantial punitive damages." *Id.* It found such an award "not inconceivable." *Id.* Due to its reservation of rights, CNA had an interest in providing a less than vigorous defense to allegations that would have supported a claim of punitive damages. As a result, Nandorf was subjected to greater liability. *Id.*

¶ 25    The court cautioned that its determination does not mean an insured is entitled to independent counsel whenever the underlying action seeks punitive damages. Rather, in the case before it where "punitive damages formed a substantial portion of the potential liability in the [underlying action] and CNA's disclaimer of liability for punitive damages left Nandorf with the greater interest and risk in the litigation," a conflict of interest was created entitling Nandorf to retain independent counsel paid for by CNA. *Id.* at 140. See also *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 756-57 (1997) (finding that, since the compensatory damages claims would likely exhaust the policy limits and there was the potential for a large punitive damages award not covered by the policy, a conflict existed because the insured had an interest to settle the case before trial whereas the insurer "would have lost nothing by letting the case go to the jury").

¶ 26    Like the insurers in *Nandorf* and *Mobil Oil*, Steadfast reserved its right to deny coverage for punitive damages. To determine whether a conflict exists here, we compare the allegations in Israel's complaint to Steadfast's policy and consider whether Steadfast's interests "would be furthered by providing a less-than-vigorous defense to those allegations." *Nandorf*, 134 Ill. App. 3d at 137.

¶ 27    The third amended complaint alleges that Israel, who has been engaged in ongoing legal disputes with his sister over their late father's estate, discovered electronic listening and surveillance devices placed in his residence, cars, and office. Over a period of more than two years, Israel also received threatening and harassing text messages from unknown numbers that implied he was being watched and would suffer harm. Israel called the police, and they took the devices into evidence. Israel continued to receive threatening text messages and the police eventually tracked more than 2000 calls or texts made between July 6 and July 17, 2015, to numbers belonging to Bucon, Xtreme's employee.

¶ 28    The complaint further alleges that the continuous stalking and texting caused Israel to suffer extreme emotional distress and he has changed how he lived his life: he applied for a gun permit and now has a license for a concealed carry; he has taken self-defense classes to protect himself; he limits interactions with family because he does not want them exposed to any violence he may suffer; he reports to his brother Harey so that he can be monitored for safety; he has retained security experts for protection; and he discusses all legal matters away from his home and office in case those locations have been bugged. Due to the threats and stalking he has endured, Israel lives in "a state of constant vigilance and anxiety."

¶ 29    The third amended complaint seeks no less than $120,000 in compensatory damages and no less than $2.1 million in punitive damages. Here, as was the case in *Nandorf* and *Mobil Oil*,

the underlying complaint seeks a substantially greater amount of punitive damages than compensatory damages, but the insurance policy explicitly denies coverage for punitive damages, and Steadfast has not waived its reservation of rights regarding punitive damages. Such an award is not inconceivable given the allegations in the underlying complaint. Where punitive damages form a substantial portion of the potential liability in the underlying action and Steadfast disclaims liability for punitive damages, Xtreme is left with the greater interest and risk in the litigation. Therefore, a conflict of interest exists, entitling Xtreme to obtain independent counsel paid for by Steadfast. *Nandorf*, 134 Ill. App. 3d at 140.

¶ 30     Also, although the claims for compensatory and punitive damages arise from the same wrongful conduct, additional evidence is required to recover punitive damages. Punitive damages "are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 414 (1990). Punitive damages are proper "when the defendant's tortious conduct evinces a high degree of moral culpability, that is, when the tort is 'committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.' " *Slovinski v. Elliott*, 237 Ill. 2d 51, 58 (2010) (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978)). Since Steadfast has denied coverage for punitive damages, it has little interest in defending against Israel's claims for punitive damages.

¶ 31     Steadfast asks this court to consider Israel's most recent fifth amended complaint, which was filed during the pendency of this appeal and which this court took judicial notice of after granting Steadfast's motion to supplement the record. We note that the trial court did not consider the fifth amended complaint in making its determination. However, judicial notice is

proper where the document in question is part of the public record, contains readily verifiable facts capable of instant demonstration, and will aid in the efficient disposition of a case. *Muller v. Zollar*, 267 Ill. App. 3d 339, 341 (1994). A reviewing court also "may take judicial notice regardless of whether such notice was sought at the trial court level." *Id.* While we do not rely on the fifth amended complaint for our determination, it does support our finding pursuant to the third amended complaint.

¶ 32    Steadfast points to the increased amount of compensatory damages sought in the fifth amended complaint compared to the amount alleged in the third amended complaint. Where the third amended complaint sought no less than $120,000 in compensatory damages, the fifth amended complaint now seeks no less than $800,000 in compensatory damages. Steadfast argues that this proves the potential exists for a significant compensatory damages award so that "[t]here is no significant disproportion between Israel's claim for compensatory damages and his claim for punitive damages," as was the case in *Nandorf*.

¶ 33    We disagree. In determining whether a conflict exists, courts should look at who bears the greater risk and interest in the allegations of the underlying complaint. *Nandorf*, 134 Ill. App. 3d at 140. While the fifth amended complaint does seek more compensatory damages, it also seeks more in punitive damages—no less than $4 million. The amount of punitive damages sought remains substantially greater than the amount sought for compensatory damages, leaving Xtreme with the greater interest and risk in the litigation. Furthermore, the amount of compensatory damages alleged in the fifth amended complaint, while much larger, is within Steadfast's policy limits. Xtreme, on the other hand, now faces twice the amount of punitive damages sought in the third amended complaint. As was the case with the third amended complaint, Xtreme has more of an interest in settling the case prior to trial, whereas Steadfast

"los[es] nothing in letting the case go to the jury." *Mobil Oil Corp.*, 288 Ill. App. 3d at 756-57. A conflict of interest still exists regarding the fifth amended complaint.

¶ 34    Steadfast also contends that Xtreme breached its duty to cooperate and thus has forfeited its right to coverage under the policy. Steadfast's argument, however, is based on its right to appoint defense counsel and control the defense. As we have found, this case presents an exception to the general rule that the insurer has a right to control the defense. Therefore, Xtreme was entitled to select its own counsel, and Xtreme's failure to accept control of the case by Steadfast's chosen counsel is not a breach of its duty to cooperate. Furthermore, in order for Steadfast to avoid responsibility under the policy, Steadfast must show that it was substantially prejudiced by Xtreme's failure to cooperate. "Proof of substantial prejudice requires an insurer to demonstrate that it was actually hampered in its defense by the violation of the cooperation clause." *M.F.A. Mutual Insurance Co. v. Cheek*, 66 Ill. 2d 492, 500 (1977). There is no "presumption of prejudice when the insurer attempts to avoid responsibility for a breach of the cooperation clause." *Id.* Here, Steadfast merely argues that Xtreme told Steadfast's chosen counsel "to take no action," which hampered its defense. Since Steadfast has not shown how it was actually hampered in its defense, it cannot deny coverage by claiming a breach of the cooperation clause.

¶ 35                                    IV. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 37    Affirmed.